IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE MCDONNEL GROUP, LLC**<br><br>        Plaintiff,<br>v.<br><br>**STARR SURPLUS LINES INSURANCE COMPANY AND LEXINGTON INSURANCE COMPANY**<br><br>        Defendant. | Case No. 2:18-cv-01380-JTM-JCW<br><br>Section: H        Division: 2<br><br>Judge: Jane Triche Milazzo<br><br>Magistrate Judge: Joseph C. Wilkinson |

**DEFENDANTS' REPLY MEMORANDUM TO JUNG'S OPPOSITION TO DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT**

**COME NOW**, Defendants Starr Surplus Lines Insurance Company ("Starr") and Lexington Insurance Company ("Lexington") (collectively "Defendants") and file this Reply Memorandum to The Jung, L.L.C.'s ("Jung") Opposition [ECF No. 113] to Defendants' First Motion for Summary Judgment as follows:

**I.    The Jung Hotel is not an insured or Additional Insured under the Policies.**

    **A.    Jung bears the burden of proving it is an Additional Insured under the Policies.**

Jung bears the burden of proving it is an insured under the Policies. Defendants do not have any burden in this regard. There is no dispute on this point. In a case with similar facts and circumstances, this District Court considered a hotel owner's claim that it was an additional insured under its contractor's builder's risk policy. The court stated:

> First, **[the hotel owner] bears the burden of proof as to its status as an insured under the ACE [builder's risk] policy. ACE does not bear the burden of negating [the owner's] claim to insured status**. In Louisiana, an insured must

meet the initial burden of establishing that the policy affords coverage for an incident and that the incident falls within the policy's terms. . . . This initial burden applies to those insureds whose status as such is not in question and therefore have undisputed rights to seek coverage under the policy. **If a bona fide insured must prove coverage, then it follows rather easily that a party like [the owner] with no privity to the insurer who seeks coverage as an insured on a policy bears the burden of proof on insured status.** This conclusion is buttressed by Louisiana Civil Code article 1831 which states that "[a] party who demands performance of an obligation must prove the existence of the obligation."

*WH Holdings, LLC v. ACE Am. Ins. Co.*, No. CIV.A. 07-7110, 2013 WL 2286107, at *3 (E.D. La. May 23, 2013), *aff'd sub nom. WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 574 F. App'x 383 (5th Cir. 2014) (emphasis added).

For the reasons set forth herein, as well as in Defendants' First Motion for Summary Judgment and exhibits thereto, Supporting Memorandum, and Statement of Undisputed Material Facts, Jung has not and cannot meet its burden of proving its status as an Additional Insured under the Policies.[1]

### B. The McDonnel Agreement did not require McDonnel to name Jung as an Additional Insured on the Policies.

According to the clear and unambiguous language of the Additional Insured provision in the Policies, Jung, as owner, can only be recognized as an Additional Insured "[t]o the extent required by any contract or subcontract for an **INSURED PROJECT\*** . . . ." *See* Ex. B to Mot. ECF No. 110-2, Section I.1.B. The McDonnel Agreement provides that **"The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201-2007**." Ex. A to Mot., A102-2007, Article 17, ECF No. 110-1 (emphasis added).

---

[1] Defendants filed their Second Motion for Summary Judgment on February 20, 2019 [ECF No. 114]. While the instant motion, Defendants' First Motion for Summary Judgment, is dispositive of all issues and should result in final judgment of dismissal as to Jung's Complaint of Intervention, the Second Motion for Summary Judgment makes clear that even if Jung could show it was an Additional Insured, there is no coverage for its claims.

Article 11.1.1 of AIA Document A201-2007 requires The McDonnel Group, LLC ("McDonnel" or "Contractor") to provide commercial liability insurance for certain claims set forth in 11.1.1, such as workers' compensation and bodily injury claims. However, Article 11.3., the provision of the document dealing with the all-risk property insurance, the coverage at issue under the Policies here, states "Unless otherwise provided, ***the Owner [Jung] shall purchase and maintain . . . property insurance written on a builder's risk 'all-risk' or equivalent policy form in the amount of the initial Contract Sum*** . . . ." Ex. A to Mot., A201-2007, Article 11.3, ECF No. 110-1 (emphasis added).[2] Jung suggests, without any support, that a requirement for such coverage is "otherwise provided," but it fails to quote any contractual provision to that effect.

Under the Policies, Jung is not a Named Insured or an Additional Named Insured. In order to meet its burden and avoid summary judgment, it must prove that the contract for the Insured Project, referred to herein as the McDonnel Agreement, requires that Jung be an Additional Insured. In support of their First Motion for Summary Judgment, Defendants cited authority in their Memorandum where two courts, including the Eastern District of Louisiana, considered substantially similar Additional Insured provisions in insurance policies, and found that the party seeking Additional Insured status was an Additional Insured <u>only</u> to the extent required by the contract. *See* Defs.' Mem. [110-9] at 7-8 (citing *Ace Am. Ins. Co. v. Keystone Constr. & Maint. Servs., Inc.*, No. 3:11CV1136 SRU, 2012 WL 4483913, at *10 (D. Conn. Sept. 27, 2012) ("The insurance policy . . . determines whether parties are 'additional insureds.'"; "The subcontractors are covered by the plaintiffs' insurance policy, then, to the extent required by the [owner/general contractor] Contract."); *see also Felham Enters. (Cayman) Ltd. v. Certain Underwriters at Lloyds,*

---

[2] Article 11.3.1.2 provides that where Jung does not procure property insurance, McDonnel is entitled to purchase such insurance to protect it, its subcontractors, and its sub-subcontractors. It does not mention the owner. *Id.*, Article 11.3.1.2.

3

*London Cos.,* No. CIV.A. 02-3588, 2004 WL 2984296, at *4, *6 (E.D. La. Dec. 6, 2004) ("Although the contracts could have been drafted to specify that [the owner] was to be named as an additional insured for purposes of liability coverage *and* builder's risk coverage, they were not."; "The relevant policy provisions do not extend [the owner's] additional insured status for purposes of [the subcontractor's] liability coverage to the builder's risk coverage at issue here."). Jung cites no authority to the contrary in its brief, and makes no attempt to distinguish the authority cited by Defendants.

In its Opposition, Jung relies on the opening phrase of Article 11.3 above, "unless otherwise provided," and states that "The McDonnel Agreement clearly provides otherwise; accordingly, McDonnel obtained the Policies and named Jung as an additional insured . . . ." Opp'n at 5, ECF No. 113. However, in support of this conclusory statement, Jung points to no text or provisions in the McDonnel Agreement, or any addendum thereto, or any other written agreement, that "clearly provide[] otherwise." Instead, it cites to the deposition testimony of Grayson Bultman ("Bultman"), Project Manager for McDonnel, and the declaration of Jung's manager, Joseph A. Jaeger ("Jaeger"). For the reasons set forth below, this extrinsic evidence cannot be considered to alter the terms of a clear and unambiguous contract.

**C.     The McDonnel Agreement is unambiguous, thus extrinsic evidence regarding intent cannot be considered.**

Defendants filed a Motion to Strike the deposition testimony of Bultman and the declaration of Jaeger, Exhibits L and M to Jung's Opposition. *See* Mot., ECF No. 115, and Mem., ECF No. 115-2. Defendants incorporate the Motion and Memorandum herein by reference.

The McDonnell Agreement is comprised of two standard form agreements, AIA Documents A102-2007—the Standard Form of Agreement Between Owner and Contractor, and A201-2007—General Conditions of the Contract for Construction. Article I of the Form of

4

Agreement, AIA 102-2007, contains the following provision: "The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, **either written or oral**. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, **this Agreement shall govern**." Ex. A to Mot., A102-2007, Article 1, ECF No. 110-1 (emphasis added). Article 17 of the same document provides that **"**The Contractor shall purchase and maintain insurance and provide bonds **as set forth in Article 11 of AIA Document A201-2007**." *Id*., Article 17 (emphasis added). Pursuant to the clear language above, the second document, the General Conditions, A201-2007, Article 11, sets forth the parties' requirements for Insurance and Bonds. *Id*., A201-2007, Article 11.

Article 11.1.1. requires McDonnel (Contractor) to provide commercial liability insurance, not property insurance, for certain claims set forth in 11.1.1, such as workers' compensation and bodily injury claims. However, Article 11.3., the provision of the document dealing with all-risk property insurance, the type of coverage at issue under the Policies here, provides that "Unless otherwise provided, *the Owner [Jung] shall purchase and maintain . . . property insurance written on a builder's risk 'all-risk' or equivalent policy form in the amount of the initial Contract Sum* . . . ." *Id.*, Article 11.3 (emphasis added).³ This is a standard form used in the construction industry and it is clear and unambiguous. *See Westfield Ins. Grp. v. Affinia Dev., L.L.C.*, 982 N.E.2d 132, 136, 144 (Ohio Ct. App. 2012) (noting that the language of form A201-2007 was "plain and unambiguous"); *United Nat'l Ins. Co. v. Peninsula Roofing Co., Inc*., No. CV GLR-16-3548, 2018 WL 1583554, at *4 (D. Md. Mar. 30, 2018) (same). There is no indication or

---

³ Notably, Jung misstates this provision in its Opposition as follows: "AIA 201-2007, the contract referenced in the McDonnel Agreement, requires McDonnel to purchase property insurance that 'shall include the **interests** of the Owner.'" *See* Opp'n at 7-8, ECF No. 113. As seen from the document, A201-2007, the contract requires "Owner" to purchase property insurance; not McDonnel (or contractor). Ex. A to Mot., A201-2007, Article 11.3, ECF No. 110-1.

5

assertion by any party that the General Conditions form, AIA 201-2007, particularly Article 11, was altered or amended in any way by the parties.

The General Conditions form, AIA 201-2007, also contains the following provision: "The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, **either written or oral**. The Contract may be amended or modified only by a Modification." *Id.* at Article 1.1.2 (emphasis added). A Modification is defined as "(1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect." *Id.* at Article 1.1.1. Jung has not presented any Modification to the McDonnel Agreement requiring that it be an Additional Insured. Its attempt to suggest an oral agreement exists regarding the purchase of builder's risk insurance lacks any factual basis whatsoever,[4] and is contrary to the unambiguous terms of the Contract, which requires Modifications to be in writing.

The issue of whether a contract is ambiguous is a question of law. *Sanders v. Ashland Oil, Inc.*, 696 So. 2d 1031, 1037 (La. Ct. App. 1997). Pursuant to Louisiana law, "[w]hen a contract is clear and unambiguous, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol or other extrinsic evidence." *Fagot v. Dow Chem. Co.*, Nos. 2018-CA-0648 and 2018-CW-0212, 2018 WL 5732464, at *6 (La. Ct. App. Nov. 2, 2018) (citing LA. CIV. CODE ANN. art. 1848). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Allain v. Shell W. E & P, Inc.*, 762 So. 2d 709, 714 (La. Ct. App. 2000) (citing LA. CIV. CODE ANN. art. 2046). "The use of parol or other

---

[4] Jung provides no details whatsoever regarding this supposed oral agreement. There is no information in its pleading or the attached declaration regarding who entered into the agreement, when it was entered into, or the terms of same.

extrinsic evidence is proper only when a contract is found to be ambiguous after an examination of the four corners of the agreement, or when it is susceptible to more than one interpretation, or the intent of the parties cannot be ascertained." *Fagot*, 2018 WL 5732464, at *6; *see also Sanders*, 696 So. 2d at 1037.

In *Fagot*, the court considered an indemnity provision in a contract between an owner and general contractor. *Fagot*, 2018 WL 5732464, at *6. The contractor claimed that the trial court erred in striking the deposition of its corporate representative and a prior version of the contract, urging that parol evidence was necessary for the trial court to ascertain the intent of the parties. The court found that the trial court did not err in striking this extrinsic evidence from consideration. *Id.* "Having found no ambiguity in the indemnity provisions in the contracts in the instant case, no further interpretation may be made in search of the parties' intent." *Id.* (citing LA. CIV. CODE. ANN. art. 2046), *writ denied*, --- So.3d ----, No. 2018-1976, 2019 WL 669458 (La. Jan. 28, 2019); s*ee also D L Star LLC v. Royal Seal Constr. Inc.*, No. CV 14-952, 2016 WL 1270265, at *5 (W.D. La. Mar. 31, 2016) ("[B]ecause there is no ambiguity on the face of the contract, any additional extra contractual evidence would be . . . irrelevant to the intent of the parties . . . .").

Here, as in *Fagot*, an examination of the four corners of the McDonnel Agreement confirms that the Agreement is clear and unambiguous. Indeed, Jung makes no substantive argument in its Opposition that the McDonnel Agreement is ambiguous.[5] A reading of the clear language of the McDonnel Agreement leads to only one reasonable interpretation: Jung was required to purchase property builder's risk insurance; McDonnel was not required to do so, and certainly was not

---

[5] Jung makes the following unsupported conclusory allegation, seemingly as an afterthought: "At the very least, however, ambiguities in the contracts, which must be interpreted against the Insurers, creates (sic) a genuine issue of material fact." Opp'n at 11, ECF No. 113. It is unclear whether Jung is referring to the McDonnel Agreement or the Policies. Presumably, Jung is referring to the Policies, as the Defendants were not parties to the McDonnel Agreement. However, even if Jung is referring to the Policies, it is not entitled to the benefit of *contra proferentum*.

7

required to name Jung as an Additional Insured if it did purchase builder's risk insurance. Accordingly, the extrinsic evidence of Bultman's deposition testimony and Jaeger's declaration cannot be considered to alter or contradict the Agreement. *See Fagot*, 2018 WL 5732464, at *6.

> **D.** **Jung has not and cannot meet its burden of proving it is an Additional Insured under the Policies.**

Even if this Court were to consider the improper parol or extrinsic evidence (which it should not), Jung is still unable to meet its burden of proof in establishing that it is an Additional Insured under the Policies. Jung argues that no language in the Policies or the McDonnel Agreement prohibit a verbal agreement to name Jung as an Additional Insured, and that the testimony and declaration referenced above establish an agreement to name Jung as an Additional Insured. This is contrary to the McDonnel Agreement which states in two different locations that "The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, **either written or oral**. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, **this Agreement shall govern**." Ex. A to Mot., A102-2007, Article 1, ECF No. 110-1; A201-1997, Article 1.1.2 (emphasis added). The Agreement further provides that "The Contract may be amended or modified only by a Modification[,]" which is defined as "(1) **a written amendment to the Contract signed by both parties**, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect." *Id.* at Articles 1.1.1 and 1.1.2. (emphasis added). There is no evidence of any Modification to the McDonnel Agreement regarding insurance requirements.

In any event, Bultman did not testify about any oral agreement to make Jung an Additional Insured. In response to leading questions from Jung's counsel he agreed that he understood that Jung was to be listed as an Additional Insured under the Policies based on the Certificate of

Insurance, which, as previously pointed out by Defendants, identifies Jung as an Additional Insured only on a separate Terrorism Policy. *See* Ex. L to Opp'n, ECF No. 113-15 at 5-7. As set forth in more detail in Defendants' Motion to Strike [ECF No. 115] and Supporting Memorandum [ECF No. 115-2], Bultman's testimony shows a clear lack of personal knowledge. He did not testify that he was involved in the issuance of the aforementioned Certificate and instead based his knowledge merely on what the Certificate had written on it; nothing more. Further, Mr. Bultman admitted during his deposition that he was not involved in the negotiation of the McDonnel Agreement or negotiation and/or procurement of the Policies, so he has no personal knowledge regarding either. *See* Ex. 1 to Mot., Bultman Dep., at 35:3-18, 43:14-21, 46:13-47:2, ECF No. 115-1.[6] Further, Jung cites no deposition testimony regarding an amendment or Modification of the McDonnel Agreement regarding the insurance requirements.

Jung also relies on the declaration of Jung's manager, Joseph A. Jaeger, wherein he states: "As part of the agreement between The Jung, LLC and The McDonnel Group, LLC, regarding the Jung Hotel renovation project, The McDonnel Group, LLC agreed to procure builder's risk insurance for the renovation project" and "agreed that The Jung, LLC would be named as an additional insured in the builder's risk insurance policies for the Jung Hotel renovation project." Ex. M to Opp'n, ECF No. 113-16. Jaeger's declaration is vague at best and only contains conclusory statements. This is classic extrinsic evidence offered to vary the terms of a written contract, it is not testimony of a subsequent verbal agreement to grant Jung Additional Insured status. Had there been such an agreement, the testimony would have identified the specifics of that agreement, including the persons involved in the verbal agreement, the date and time it occurred,

---

[6] Defendants contend that no extrinsic parol evidence should be considered by the Court, including any testimony by Mr. Bultman. The testimony included in Exhibit 1 is merely being presented to demonstrate Mr. Bultman's lack of personal knowledge. The clear and unambiguous terms of the McDonnel Agreement and Policies speak for themselves.

specific terms of the verbal agreement, and surrounding circumstances. None of that information is included in the declaration. Even if such information were included, the testimony would be of no value here because, as previously stated, a Modification of the Contract must be in writing. There is no writing.

Jung cites two cases, neither of which lend any cogency to its argument. In the first case, the court did not analyze or rule on the issue of whether the party is an additional insured; rather, the insurers and the court "assume[d] for purposes of th[e] motion that Suard was an additional assured under [the] policy . . . ." *D & L Marine Transp. Inc. v. Suard Barge Servs., Inc.*, No. CIV.A. 01-3006, 2003 WL 22208571, at *1, *4 (E.D. La. Sept. 23, 2003). Moreover, the case is clearly distinguishable based upon the significantly different policy wording. The following additional insured provisions in *D & L* were much broader than the provision in the Policies here: "Privilege is hereby granted the Assured to name others for whom the Assured is performing work as Additional Assureds on this Policy . . ." and "Where required by contract, or agreed to by the Assured, it is understood and agreed that: 1. Permission is also granted to name as Additional Assureds . . . ." *Id.* at *2 (emphasis added). The second case cited by Jung is also distinguishable in that the additional insured provision was much broader, and on its face allowed any type of agreement, whether oral or otherwise: "where required by contract, agreement or otherwise, the Assured [GATCO] is granted privilege to include hereunder other parties as additional Assureds." *Gulf Atl. Transp. Co. v. Offshore Tugs, Inc.*, No. CIV. A. 90-1414, 1992 WL 59425, at *18 (E.D. La. Mar. 13, 1992) (emphasis added).

The opinions of the Eastern District of Louisiana and the Fifth Circuit in *WH Holdings, LLC v. ACE Am. Ins. Co.*,[7] are instructive here. In that case, the Eastern District and the Fifth

---

[7] No. CIV.A. 07-7110, 2013 WL 2286107, at *3 (E.D. La. May 23, 2013), *aff'd sub nom. WH Holdings, L.L.C. v. Ace Am. Ins. Co*., 574 F. App'x 383 (5th Cir. 2014).

Circuit considered an additional insured issue with similar, but distinguishable, facts and circumstances currently before this Court.[8] The case involves an AIA A201-1997 General Conditions form (Jung's is an A201-2007 form). Besides the year of the form, the case is distinguishable from Jung in that the parties in *WH Holdings* modified the provision of the contract regarding property insurance from the form language. *WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 481 F. App'x 894, 896 (5th Cir. 2012). Specifically, the parties made the following modification to subsection 11.4 of the General Conditions entitled "Property Insurance" (a prior version of the provision at issue here): "~~Unless otherwise provided, the Owner~~ The Contractor shall purchase and maintain ... property insurance written on a builder's risk 'all-risk' or equivalent policy form . . . ." *Id.* The parties also added another section to the contract, 11.1.5(g), regarding builder's risk insurance limits, which further contributed to the ambiguity. *Id.* at 896-98. The Fifth Circuit found that based on the modifications to the contract, the contract was ambiguous as to who bore the obligation to purchase property insurance, and remanded the matter to the district court to consider extrinsic evidence in resolving the ambiguity. *Id.* at 895.

On remand, the district court was "persuaded that the extrinsic course of conduct evidence . . . does not resolve the contractual ambiguity created by subsections 11.4.1 and 11.1.5(g) of the General Conditions in WH Holdings' favor." *WH Holdings,* 2013 WL 2286107, at *14. "In other words, the extrinsic evidence taken as a whole does not support the conclusion that the proper interpretation of subsections 11.4.1 and 11.1.5(g) is that the parties intended for [the contractor] to

---

[8] The district court originally determined that the contractor bore the obligation to purchase property insurance under the contract and entered summary judgment in favor the insurer. *See WH Holdings, LLC v. ACE Am. Ins. Co.*, No. CV 07-7110, 2010 WL 11508972, at *1 (E.D. La. Sept. 24, 2010), *vacated and remanded sub nom. WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 481 F. App'x 894 (5th Cir. 2012).

11

be responsible for procuring builder's risk coverage for construction that was a renovation to an existing structure." *Id.* The court concluded:

> In sum, [the owner] has not established that the General Conditions required [contractor] to procure builder's risk coverage for construction work that constituted renovations to an existing structure. The extrinsic course of conduct evidence does not resolve the ambiguous General Conditions in [the owner'] favor. . . . The sole mechanism for Plaintiffs to recover from ACE under [contractor's] builder's risk policy is via the Broad Named endorsement which is ACE's promise to recognize as an insured any party that [contractor] was responsible for insuring. But having failed to establish that the proper interpretation of the General Conditions is that [the owner] and [contractor] intended for [contractor] to be responsible for insuring [the owner's] interest in the Ritz renovations, ACE is not obligated to recognize [the owner] as a named insured on its policy.

*Id.* at *15, *aff'd by WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 574 F. App'x 383, 385 (5th Cir. 2014) ("The district court properly concluded that [the owner] failed to point to extrinsic evidence material to resolving, in its favor, the contractual ambiguity as to whether [contractor] was obligated to insure [the owner's] interest in the renovation work.").

In the case *sub judice*, the parties did not modify the AIA form language and, as such, no ambiguity was created. Thus, for the reasons previously stated, this Court should not consider extrinsic evidence. Yet, in *WH Holdings*, even with the modifications to the wording of the AIA form document reflecting the contractor was to purchase builder's risk insurance, and the consideration of extrinsic evidence, the Eastern District of Louisiana still found that the <u>owner was not an additional insured under the ACE property policy because the owner failed to meet its burden in proving that the contract required the contractor to include the owner as an insured</u>, as required by the ACE policy. *WH Holdings, LLC v. ACE Am. Ins. Co.*, No. CIV.A. 07-7110, 2013 WL 2286107, at *3 (E.D. La. May 23, 2013), *aff'd sub nom. WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 574 F. App'x 383 (5th Cir. 2014). Similarly, Jung has not and cannot meet its burden of proving its status as an Additional Insured under the Policies because of the clear and unambiguous wording of the Policies and the McDonnel Agreement.

### E. The Certificate conferred no rights upon Jung.

Defendants re-urge and incorporate herein by reference their arguments in Section III.B.2 of their Memorandum [110-9] at 8-11.[9] Jung makes a passing argument that the Additional Insured provision in the Policies is "vague and ambiguous" and that the policy wording should be construed against Defendants. *See* ECF [113], at 11-12 12. However, Jung mis-states the law and has failed to show there is any ambiguity in the wording. First, the rule of construction of reading language against an insurer is not applicable to an unambiguous insurance contract, even if there is a harsh consequence. *See Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 958 (5th Cir. 2009). Further, an insurance policy is not ambiguous just because there is a disagreement about the meaning of the wording. *Id.* Rather, the wording must be susceptible to two or more interpretations and each of the alternative interpretations must be reasonable. *Id.* Jung has failed to put forward an alternate reasonable interpretation to the Additional Insured provision of the Policies. Finally, the presumption against the insurer's interpretation does not apply under Louisiana law if the insured is a sophisticated commercial entity that utilizes an agent to secure desired policy provisions. *Id.* McDonnel is a sophisticated business entity, and it is not disputed that McDonnel utilized a professional insurance broker, Arthur J. Gallagher, to place the Policies at issue in this lawsuit. *Id.*

Defendants further note that the *WH Holdings* case discussed in detail above supports their argument on the Certificate issue, where the Eastern District of Louisiana rejected the owner's reliance on a Certificate of Insurance. In *WH Holdings*, the contractor gave the owner "a Certificate of Liability Insurance that specifically lists the ACE builder's risk policy and references in the comment section an Additional Insured Endorsement in favor of WH Holdings." *WH Holdings,*

---

[9] It is undisputed that no ACORD Certificate was ever provided to Defendants.

*LLC v. ACE Am. Ins. Co.*, No. CIV.A. 07-7110, 2013 WL 2286107, at *5 (E.D. La. May 23, 2013).

The court noted the following:

> On May 25, 2005, [contractor] faxed to [owner's] attorney a Certificate of Liability Insurance. The Certificate lists several types of coverage and the corresponding limits, and the ACE builder's risk policy is one of the policies listed. At the end of the Certificate is some manuscript text that notes that the "Additional Insured Endorsement and Waiver of Subrogation added as required by contract in favor of: W H. Holdings, LLC...." (Rec. Doc. 190–26, Plaintiffs' Exhibit 17). **The Certificate was issued by [contractor's] insurance broker, Willis, not by ACE. There is nothing in the record to suggest that ACE had any role in issuing the Certificate or that any representative of ACE even saw the Certificate prior to this litigation.**
>
> **This Certificate suffers from the same ambiguity problems that plague subsection 11.1.5(g) of the General Conditions.** The Certificate was presumably provided pursuant to subsection 11.1.3 of the General Conditions, which like subsection 11.1.5(g), is also located in the section of the General Conditions covering the contractor's liability insurance—hence the document's name, Certificate of Liability Insurance. The manuscript text in the comment section that WH Holdings relies so heavily upon does not reference a specific policy of the several listed on the face of the Certificate, and the phrase "Additional Insured" used in the Certificate is the same verbiage used in subsection 11.1.3.1 of the General Conditions. . . .

*Id*. at *10–11 (emphasis added).

## II. This Court should deny Jung's Rule 56(d) request for further discovery.

Jung claims in the alternative, that Defendants' First Motion for Summary Judgment is premature. Jung argues that it "does not have all factual information and discovery needed to fully oppose the Insurers' Motion." Opp'n at 14, ECF No. 113.

A party "requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts'. . . . Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Am. Family Life*

*Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (internal citations omitted). "Rule 56(d) may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the [requested discovery] will enable him to rebut the movant's allegations of no genuine issue of material fact." *Ticknor v. Rouse's Enters., LLC*, 2 F. Supp. 3d 882, 897 (E.D. La. 2014) (citation and internal quotation marks omitted). "[A] plaintiff's entitlement to discovery prior to ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Id.*

Jung claims it needs to take the depositions of Allan McDonnel, a representative of Arthur J. Gallagher ("Gallagher"), and Defendants. However, Jung sets forth no specific facts it believes it will obtain from these depositions, or a plausible basis for same. Instead, Jung makes the vague assertion that it "has not had an opportunity to ask [McDonnel] about Jung's status as an additional insured." Opp'n at 15, ECF No. 113. Further, these are not facts that should be unknown to Jung. Rather, the issues concern its contract with McDonnel and its communications with McDonnel and the broker regarding the Policies. All of the information and documents regarding these issues should be in McDonnel's possession already.

Jung states it wishes to depose Gallagher "regarding the facts and circumstances surrounding the naming of Jung as an additional Insured." *See* Declaration, Ex. A to Opp'n, ECF No. 113-2. Jung fails to mention any detail of what testimony it hopes to obtain from Gallagher or Defendants, or a plausible basis for same. Jung has failed to meet its burden with its "vague assertions" that additional discovery is needed. *See Biles*, 714 F.3d at 895 ("Because the burden is on the party requesting additional discovery to show how the potential discovery, if it is obtained, will influence the outcome of the summary judgment motion, the fact that it is unclear what

Appellants hoped for beyond a direct admission weighs in favor of the district court's decision."). Jung also fails to allege how its requested discovery will affect the Court's ruling on the Defendants' Motion. There is no need for further discovery here as Jung did not even put forth a basis for Additional Insured status through its own witness, and it certainly did not produce any document that would support its claim.

As set forth herein, both the Policies and the McDonnel Agreement are clear and unambiguous, thus no extrinsic evidence may be considered to alter their terms. Jung has failed to meet its burden of showing that the requested discovery is necessary or that it will create a genuine issue of material fact. Accordingly, this Court should deny Jung's request to conduct further discovery pursuant to Rule 56(d).

### III.   Conclusion

For the foregoing reasons and as set forth in Defendants' First Motion for Summary Judgement [ECF No. 110], Supporting Memorandum [ECF No. 110-9], and Statement of Undisputed Material Facts [ECF No. 110-8], the Court should grant Defendants' First Motion for Summary Judgment and dismiss Jung's claims against Defendants. Additionally and/or alternatively, this Court should dismiss Jung's claims against Defendants for the reasons set forth in Defendants' Second Motion for Summary Judgment and supporting documents, ECF No. 114.

Respectfully submitted this the 26th day of February, 2019.

>                **Starr Surplus Lines Insurance Company**
>                **And Lexington Insurance Company**
>
>                **BY:    /s/ Lee Ann Thigpen**
>                           **Lee Ann Thigpen**

**OF COUNSEL:**

James L. Warren III (PHV)
Lee Ann Thigpen (LA Bar # 36953)
James W. Gunn III (PHV)
**CARROLL WARREN & PARKER PLLC**
188 East Capitol Street, Suite 1200 (39201)
Post Office Box 1005
Jackson, Mississippi 39215-1005
Telephone:     (601) 592-1010
Facsimile:      (601) 592-6060
jwarren@cwplaw.com
lthigpen@cwplaw.com
tgunn@cwplaw.com

*Attorneys for Defendants Starr Surplus Lines
Insurance Company and Lexington Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

This the 26th day of February, 2019.

/s/ Lee Ann Thigpen
Lee Ann Thigpen
