UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCDONNEL GROUP, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-1380**<br>**c/w 19-2227; 19-2230;**<br>**19-10462** |
| **STARR SURPLUS LINES**<br>**INSURANCE COMPANY, ET AL.** | **SECTION: "H"(2)**<br>**(Applies to 19-2227;**<br>**19-2230)** |

## ORDER AND REASONS

Before the Court are Defendants' Motion to Dismiss Consolidated Plaintiff Mechanical Construction Company, L.L.C. n/k/a Bernhard MCC, L.L.C. (Doc. 161) and Motion to Dismiss Consolidated Plaintiff All Star Electric, Inc. (Doc. 162). For the following reasons, Defendants' Motions to Dismiss are **DENIED**.

## BACKGROUND

This lawsuit arises out of the renovation of the Jung Hotel and Residences in New Orleans. In late 2014, The Jung, L.L.C. ("Jung") hired McDonnel Group, L.L.C. ("McDonnel") to be the general contractor on the renovation. In early 2015, McDonnel purchased builder's risk insurance policies (the "Policies") from Defendants Starr Surplus Lines Insurance

1

Company ("Starr") and Lexington Insurance Company ("Lexington").[1] Under the Policies, each Defendant insured 50% of the renovation project.[2]

The trouble began when water damaged the hotel on several occasions in 2017. The "water intrusion" events, as the parties refer to them, delayed the renovation. As the delays piled up, so did delay-related costs, which prompted McDonnel to file insurance claims for damages that it alleges were covered under the Policies. When Defendants allegedly failed to timely and properly adjust McDonnel's claims, McDonnel filed suit. McDonnel seeks declaratory relief and damages for Defendants' alleged breach of contract and bad faith claim adjustment.

On March 8, 2019, Mechanical Construction Company, L.L.C. n/k/a Bernhard MCC, L.L.C. ("BMCC"), an HVAC and plumbing subcontractor of McDonnel's on the Jung Hotel project, filed its own suit against Defendants. An electrical subcontractor, All Star Electric, Inc. ("ASE"), followed shortly thereafter with a separate suit. Both suits generally seek the same type of relief McDonnel seeks: damages based on Defendants' alleged breach of the Policies and bad faith insurance practice. On March 18, 2019, this Court consolidated all three cases.[3]

On April 9, 2019, Defendants filed Motions to Dismiss Consolidated Plaintiffs BMCC and ASE (collectively "Subcontractors"). The Subcontractors oppose Defendants' Motions. The Court heard Oral Argument on the Motion to Dismiss BMCC on May 30, 2019.

---

[1] Builder's risk insurance is a type of property insurance that generally insures owners, contractors, and/or subcontractors against accidental losses that arise during constructions projects. Michael A. Stover, A Guide to Builder's Risk Insurance, 53 Tort Trial & Ins. Prac. L.J. 819–20 (2018).

[2] It is undisputed that the terms and conditions of the two policies are identical. Therefore, the Court will not distinguish between the two.

[3] This Court has also since consolidated into this action a separate suit filed by Jung on May 15, 2019. *See* Case No. 19-10462.

The crux of Defendants' argument is that the Subcontractors' claims must fail because the Subcontractors are not insured under the Policies on which their claims depend. It is undisputed that McDonnel is the only named insured on the Policies. What the parties disagree about is whether the Subcontractors qualify as additional insureds under the Policies.

Defendants argue that the Policies unambiguously define who qualifies as an additional insured and that the Subcontractors clearly do not fit within that definition. The Subcontractors, meanwhile, generally argue that the Policies are unambiguously clear for the opposite proposition: that the Subcontractors are indeed additional insureds. Because Defendants argue for dismissal of both BMCC and ASE for the same reasons, and because the issues presented by both Motions are similar, the Court will address both Motions simultaneously.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim for relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The Court need not, however, accept as true legal conclusions couched as factual allegations.[7] To be legally sufficient, a complaint must establish more than a "sheer possibility"

---

[4] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[5] *Id.* (citing *Twombly*, 550 U.S. at 556).
[6] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[7] *Iqbal*, 556 U.S. 662 at 678.

3

that the plaintiff's claims are true.[8] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[9]

## LAW AND ANALYSIS

Because this is a diversity action, Louisiana law applies.[10] "Under Louisiana law, an insurance policy 'is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'"[11] The Civil Code provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[12] Alternatively, "[i]f a contract is ambiguous, a court must consider any proffered course of conduct evidence" to interpret the meaning of the ambiguous contract.[13] "[A] contract is ambiguous when, *inter alia*, its 'written terms are susceptible to more than one interpretation,' when 'there is uncertainty as to its provisions,' or when 'the parties' intent cannot be ascertained from the language used.'"[14]

The Policies define "Additional Insured(s)" as follows:

---

[8] *Id.*
[9] *Lormand*, 565 F.3d 228 at 255–57.
[10] Texas Indus., Inc. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007) ("In diversity cases . . . federal courts look to the substantive law of the forum state.") (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).
[11] Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 181 (5th Cir. 2007) (quoting Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003)).
[12] LA. CIV. CODE art. 2046.
[13] WH Holdings, L.L.C. v. Ace Am. Ins. Co., 481 F. App'x 894, 897 (5th Cir. 2012) (citing LA. CIV. CODE art. 2053).
[14] Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P., 683 F.3d 666, 668 (5th Cir. 2012) (quoting Sequoia Venture No. 2, Ltd. v. Cassidy, 968 So. 2d 806, 809 (La. App. 2 Cir. 2007); *accord* Campbell v. Melton, 817 So. 2d 69, 75 (La. 2002)).

> To the extent required by any contract or subcontract for an Insured Project*, and then only as their respective interest may appear, all owners, all contractors and subcontractors of every tier, tenants of the Insured Project* and any other individual or entity specified, in such contract or subcontract are recognized as Additional Insured's hereunder.[15]

The Court need not proceed further to find the first level of ambiguity in the Policies. The only definite takeaway from the Policies' definition of additional insureds is that whether the Subcontractors are additional insureds depends on language in other contracts. It is not clear, however, what exactly another contract must require for an entity to qualify as an additional insured.

For example, Defendants interpret the Policies to mean that another contract must require both that McDonnel purchase insurance *and* that the Subcontractors be named as additional insureds on that insurance. Subcontractor BMCC, meanwhile, argues that another contract need only require that a subcontractor be named as an additional insured to any policy procured and that whether McDonnel was required to purchase the policy is irrelevant to the Subcontractors' additional insured status.

Other ambiguities appear elsewhere. Regardless of what exactly the Policies require, both Defendants and Subcontractors cite to the "Prime Contract" between Jung and McDonnel to support their respective arguments. The Subcontractors argue that the Prime Contract requires that the Subcontractors be named as additional insureds under the Policies, which would seem to satisfy the criteria for additional insured status under the Policies. Defendants, meanwhile, argue that neither the Prime Contract nor any other contract related to the renovation project requires that the

---

[15] Doc. 161-3 at 16. The Policies define "Insured Project*" as the renovation of the Jung Hotel that is at issue in this case. *Id.* at 17.

Subcontractors be named as additional insureds.[16] The Court, therefore, will address the relevant provisions in the Prime Contract cited by the parties for their respective arguments.

The last line in the Prime Contract addresses "Insurance and Bonds."[17] The provision provides: "The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of the ALA (sic) Documents A201-2007."[18] The Prime Contract, then, incorporates what is known as the American Institute of Architecture's ("AIA") general recommended provisions for construction contracts.[19]

Article 11 of the AIA document cited to by all the parties contains a number of provisions about insurance and bonds.[20] Section 11.1 address "Contractor's Liability Insurance," and Section 11.1.1 provides that "The Contractor shall purchase . . . such insurance as will protect the Contractor from claims . . . for which the Contractor may be legally liable."[21] Section 11.3.1, meanwhile, addresses "Property Insurance" and provides as follows:

> Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of material supplied or installed by others . . . . This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.[22]

Section 11.3.1.2 further provides, in pertinent part, as follows:

---

[16] The Subcontractors do not attempt to rely on their respective subcontracts with McDonnel to satisfy the Policies' additional insured "requirement" provision.
[17] Doc. 161-1 at 14.
[18] *Id.* McDonnel is identified as the Contractor in the Prime Contract. *Id.* at 2.
[19] *See id.* at 48–86. The Prime Contract's reference to the general conditions as "ALA" documents instead of "AIA" documents appears to be a typo.
[20] *Id.* at 77–79.
[21] *Id.* at 77.
[22] *Id.* at 78.

> If the Owner does not intend to purchase insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner.[23]

The above-quoted language raises several ambiguities. First, to the extent the Prime Contract required McDonnel to purchase insurance as set forth in the AIA document, does that mean only that McDonnel was required to purchase liability insurance pursuant to Section 11.1? Or was the provision meant to shift the responsibility of purchasing builder's risk insurance from Jung to McDonnel? Additionally, does "[t]his insurance" referred to in the last sentence of Section 11.3.1 only cover builder's risk insurance procured by an owner like Jung? Or does it also refer to builder's risk policies purchased by contractors if it is "otherwise agreed" that the contractor and not the owner will purchase builder's risk insurance?

These questions and others cannot be answered solely by looking to the text of the Policies, the Prime Contract, and the AIA documents that the Prime Contract incorporates by reference. The Policies—if not on their own, certainly by virtue of their incorporation of the other contracts and documents—are ambiguous as to whether the Subcontractors are additional insureds. Accordingly, this Court is bound by Louisiana law to consider "course of conduct" evidence to determine the meaning of the Policies.[24]

At the Motion to Dismiss stage, this Court is limited to reviewing the Subcontractors' pleadings and any documents they may have referenced in

---

[23] Doc. 161-1 at 78.
[24] LA. CIV. CODE art. 2053.

7

those pleadings when determining whether they have stated plausible claims for 12(b)(6) purposes.[25] Here, drawing all inferences in a light most favorable to the Subcontractors, Defendants have failed to meet their burden to show that Plaintiffs have failed to state a claim that is plausible on its face. The Policies are ambiguous as to whether the Subcontractors are additional insureds. Accordingly, this Court needs course of conduct evidence to determine what the parties intended. As such, it would be inappropriate to dismiss the Subcontractors' claims at this time.[26]

## CONCLUSION

For the following reasons, Defendants' Motions are **DENIED**.

New Orleans, Louisiana this 31st day of May, 2019.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[25] *See* Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[26] Because this Court finds that the Policies are ambiguous as to whether the Subcontractors are additional insureds, it need not address ASE's argument that the "Coverage" section of the Policies creates additional insured status for ASE.