**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE MCDONNEL GROUP, LLC** | **CASE NO. 2:18-cv-01380-GGG-JVM c/w 19-2227; 19-2230; 19-10462** |
| **VERSUS** | **SECTION: T** |
| **STARR SURPLUS LINES INSURANCE COMPANY** | **DIVISION: 1** |

**ORDER**

Before the Court are a Motion to Reconsider and/or for Clarification of the Court's Order (R. Doc. 198) Denying Defendants' Motions to Dismiss, filed by Starr Surplus Lines Insurance Company ("Starr") and Lexington Insurance Company ("Lexington") (R. Doc. 218), and a Motion to Reconsider and/or for Clarification of the Court's Order (R. Doc. 208) Denying Defendants' First Motion for Summary Judgment, also filed by Defendants Starr and Lexington (R. Doc. 225). Jung, L.L.C. ("Jung"), Mechanical Construction Company, L.L.C., n/k/a Bernhard MCC L.L.C. ("BMCC"), and All Star Electric, Inc. ("ASE") have filed oppositions to the Motion to Reconsider the Order Denying the Motions to Dismiss (R. Docs. 228, 230, and 244). Jung filed an opposition to the Motion to Reconsider the Order Denying the First Motion for Summary Judgment (R. Doc. 237). Defendants have filed replies (R. Docs. 239 and 247). For the reasons set forth below, both Motions to Reconsider and/or for Clarification (R. Docs. 218 and 225) are **DENIED**.

BACKGROUND

The underlying facts of these consolidated matters are set forth more fully in the prior orders of this Court now under review. R. Docs. 198 and 208. Essentially, Jung hired McDonnel Group, L.L.C. ("McDonnel") to be the general contractor for the renovation of the Jung Hotel and Residences. R. Doc. 198, p. 1. McDonnel purchased builder's risk insurance policies (the "Policies") from the defendants Starr and Lexington, who each insured 50% of the project. R. Doc.

198, pp. 1-2. During the project, "water intrusion" events delayed the renovation causing delay-related costs. Eventually, McDonnel and two Subcontractors, BMCC and ASE, filed suits against Defendants seeking damages for breach of contract and bad faith claims adjustment. R. Doc. 198, p. 2. Jung intervened in the McDonnel suit alleging it suffered damages as a result of Defendants' bad faith insurance practices. R. Doc. 208, p. 2.

Defendants filed Motions to Dismiss the complaints of BMCC and ASE (R. Docs. 161 and 162), arguing that the Subcontractors' claims must fall because they were not insured under the Policies issued by Defendants, on which the Subcontractors' claims depend. As the Court noted in its May 31, 2019 Order, it is undisputed that McDonnel is the sole named insured on the Policies. The Court was thus presented with the issue of whether the Subcontractors qualify as Additional Insureds under the Policies. Order, R. Doc. 198, p. 3. Defendants argued that the Policies unambiguously define who qualifies as an additional insured and that the Subcontractors clearly do not fit within that definition. *Id.* The Subcontractors countered that the Policies are unambiguously clear for the opposite proposition that they are indeed additional insureds. *Id.* After applying the proper legal standard for a Rule 12(b)(6) motion to dismiss, as well applicable Louisiana law on the interpretation of an insurance policy,[1] the Court denied Defendants' motions. R. Doc. 198, pp. 4-8. The Court ultimately concluded that Defendants failed to meet their burden to show that Plaintiffs had failed to state a claim that is plausible on its face. "The policies are ambiguous as to whether the Subcontractors are additional insureds." *Id.*, p. 8. The Court concluded that "course of conduct evidence" was necessary to determine the intent of the parties and therefore that it was inappropriate to dismiss the Subcontractors' claims. *Id.*

Defendants also ask this Court to revisit the Court's June 14, 2019 ruling on Defendants' first motion for summary judgment (R. Doc. 208). In that motion, (R. Doc. 110), Defendants

[1] Order, R. Doc. 198, pp. 2-4.

asserted they are entitled to summary judgment on Jung's claims because those claims depend on it being insured under Defendants' Policies with McDonnel, but that Jung is neither a named insured nor an additional insured. R. Doc. 208, p. 3. The Court noted that the same argument had been presented in Defendants' motions to dismiss BMCC and ASE. R. Doc. 208, pp. 4 and 8. The Court pointed out that it had denied Defendants' motions to dismiss in R. Doc. 198. *Id.* The Court declined to grant summary judgment in favor of Defendants because the Policies were similarly ambiguous as to whether Jung was an additional insured and therefore "course of conduct" evidence was necessary to determine the meaning of the Policies. *Id.*, p. 9. The Court dismissed Defendants' argument that such evidence was both unnecessary and inappropriate, and then concluded Defendants' had failed to carry their burden of proof on the motion for summary judgment.[2] *Id.*

LAW AND ANALYSIS

Defendants ask this Court to reconsider and/or clarify its prior interlocutory rulings pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. R. Docs. 218 and 225. A motion to alter or amend a judgment filed pursuant to Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors or law or fact or to present newly discovered evidence."[3] The Rule 59(e) motion thus "calls into question the correctness of a judgment,' but it "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[4] "A moving party must satisfy at least one of the following four criteria to prevail on a Rule 59(e) motion: (1) the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the movant presents new evidence; (3) the motion is necessary in order to prevent manifest injustice; and, (4) the

---

[2] The Court had previously set forth the applicable law on the motion for summary judgment. R. Doc. 208, pp. 6-7.

[3] *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Waltman v. Int'l Paper Co.*, 875 F.2d. 468, 473 (5th Cir. 1989); *Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 394-95 (E.D. La. 2016).

[4] *Templet*, 367 F.3d at 478-79 (citations omitted); *see also LeClerc v. Webb*, 419 F.3d. 405, 412 n. 13 (5th Cir. 2005).

motion is justified by an intervening change in the controlling law."[5] The Fifth Circuit has cautioned that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[6]

With regard to the Court's May 31, 2019 Order on the motions to dismiss, Defendants argue that reconsideration and/or clarification is needed to correct manifest errors of law and/or to prevent a manifest injustice because (1) Defendants were not given the opportunity to brief fully the ambiguity issue because no substantive ambiguity argument was raised by BMCC or ASE; (2) the Additional Insured provision in the Policies is clear and unambiguous; (3) the Subcontractors' interpretation of the Policies' Additional Insured provision is not reasonable, and the Court did not make a finding that their interpretation was reasonable; and (4) the Prime Contract, even if it is ambiguous, cannot make an otherwise unambiguous Policy provision ambiguous. R. Doc. 218-1, p. 2. Defendants alternatively request clarification of the Court's order on the motions to dismiss, particularly as it relates to the finding of ambiguity, to aid the parties in the preparation of trial.

With regard to the Court's June 14, 2019 Order denying Defendants' motion for summary judgment, Defendants adopt the arguments made with regard to the order on the motions to dismiss. They further argue that reconsideration and/or clarification is necessary to correct manifest errors of law or fact and/or to prevent a manifest injustice because (1) the Policies and the Prime Contract are unambiguous and (2) the Court relied on the same analysis and reasoning in its previous order on the motions to dismiss the Subcontractors, even though the relevant language in the Prime Contract (relied on by the Subcontractors and cited by the Court) is not applicable to Jung, the Owner. Defendants argue the Court should reconsider its finding of ambiguity, because there is no basis for a finding of ambiguity in the Policies or the Prime

---

[5] *Namer*, *supra*, at 395 (quoting *Jupiter v. BellSouth Telecomms., Inc*., No. 99–0628, 1999 WL 796218, at *1 (E.D.La. Oct. 5, 1999)(Vance, J.)).

[6] *Templet*, 367 F.3d at 479 (citations omitted).

Contract as to whether the contract requires that Jung be an Additional Insured. Defendants alternatively request the Court clarify the finding of ambiguity to aid the parties in preparing for trial.

In the May 31, 2019 Order denying the Motions to Dismiss, the Court reasoned as follows:

> The Policies define "Additional Insured(s)" as follows:
>
> > To the extent required by any contract or subcontract for an Insured Project* [the renovation of the Jung Hotel], and then only as their respective interest may appear, all owners, all contractors and subcontractors of every tier, tenants of the Insured Project* and any other individual or entity specified, in such contract or subcontract are recognized as Additional Insureds hereunder.
>
> The Court need not proceed further to find the first level of ambiguity in the Policies. The only definite takeaway from the Policies' definition of additional insureds is that whether the Subcontractors are additional insureds depends on language in other contracts. It is not clear, however, what exactly another contract must require for an entity to qualify as an additional insured.
>
> For example, Defendants interpret the Policies to mean that another contract must require both that McDonnel purchase insurance and that the Subcontractors be named as additional insureds on that insurance. Subcontractor BMCC, meanwhile, argues that another contract need only require that a subcontractor be named as an additional insured to any policy procured and that whether McDonnel was required to purchase the policy is irrelevant to the Subcontractors' additional insured status.
>
> Other ambiguities appear elsewhere. Regardless of what exactly the Policies require, both Defendants and Subcontractors cite to the "Prime Contract" between Jung and McDonnel to support their respective arguments. The Subcontractors argue that the Prime Contract requires that the Subcontractors be named as additional insureds under the Policies, which would seem to satisfy the criteria for additional insured status under the Policies. Defendants, meanwhile, argue that neither the Prime Contract nor any other contract related to the renovation project requires that the Subcontractors be named as additional insureds. The Court, therefore, will address the relevant provisions in the Prime Contract cited by the parties for their respective arguments.
>
> The last line in the Prime Contract addresses "Insurance and Bonds." The provision provides: "The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of the ALA (sic) Documents A201-2007." The Prime Contract, then, incorporates what is known as the American Institute of Architecture's ("AIA") general recommended provisions for construction contracts.
>
> Article 11 of the AIA document cited to by all the parties contains a number

of provisions about insurance and bonds. Section 11.1 address "Contractor's Liability Insurance," and Section 11.1.1 provides that "The Contractor shall purchase . . . such insurance as will protect the Contractor from claims . . . for which the Contractor may be legally liable." Section 11.3.1, meanwhile, addresses "Property Insurance" and provides as follows:

> Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of material supplied or installed by others. . . . This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

Section 11.3.1.2 further provides, in pertinent part, as follows:

> If the Owner does not intend to purchase insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner.

The above-quoted language raises several ambiguities. First, to the extent the Prime Contract required McDonnel to purchase insurance as set forth in the AIA document, does that mean only that McDonnel was required to purchase liability insurance pursuant to Section 11.1? Or was the provision meant to shift the responsibility of purchasing builder's risk insurance from Jung to McDonnel? Additionally, does "[t]his insurance" referred to in the last sentence of Section 11.3.1 only cover builder's risk insurance procured by an owner like Jung? Or does it also refer to builder's risk policies purchased by contractors if it is "otherwise agreed" that the contractor and not the owner will purchase builder's risk insurance?

These questions and others cannot be answered solely by looking to the text of the Policies, the Prime Contract, and the AIA documents that the Prime Contract incorporates by reference. The Policies—if not on their own, certainly by virtue of their incorporation of the other contracts and documents—are ambiguous as to whether the Subcontractors are additional insureds. Accordingly, this Court is bound by Louisiana law to consider "course of conduct" evidence to determine the meaning of the Policies.

At the Motion to Dismiss stage, this Court is limited to reviewing the Subcontractors' pleadings and any documents they may have referenced in those pleadings when determining whether they have stated plausible claims for 12(b)(6) purposes. Here, drawing all inferences in a light most favorable to the Subcontractors, Defendants have failed to meet their burden to show that Plaintiffs

> have failed to state a claim that is plausible on its face. The Policies are ambiguous as to whether the Subcontractors are additional insureds. Accordingly, this Court needs course of conduct evidence to determine what the parties intended. As such, it would be inappropriate to dismiss the Subcontractors' claims at this time.

R. Doc. 198, pp. 4-8 (footnotes omitted).

In the June 14, 2019 Order denying the First Motion for Summary Judgment, the Court reasoned as follows:

> Defendants argue in this Motion that they are entitled to summary judgment because Jung is neither a named insured nor an additional insured under the Policies, and Jung's claims depend on it being one of the two. This Court has already ruled that the Policies are ambiguous as to whether subcontractors like Consolidated Plaintiffs BMCC and ASE are additional insureds under the Policies. For the same reasons, the Policies are equally ambiguous as to whether Jung is an additional insured. Therefore, the Court is bound by Louisiana law to consider "course of conduct" evidence to determine the meaning of the Policies.
>
> "Generally, when a contract is determined to be ambiguous, an issue of material fact exists, and the matter is not ripe for summary judgment." Defendants here did not submit any course of conduct evidence to support their Motion because they argued that the Policies were unambiguous and thus such evidence was both unnecessary and inappropriate. Because this Court finds that such evidence is necessary to interpret the Policies, Defendants have failed to carry their burden to show that they are entitled to summary judgment on this ground.

R. Doc. 208, pp. 8-9 (footnotes omitted).

Defendants have failed to carry their burden of proof under Rule 59(e). Defendants primarily contend they were unable to brief the ambiguity issue in their prior motions, and that Plaintiffs BMCC and ASE did not properly raise the ambiguity issue in their complaints. However, the interpretation of the Policies was clearly at issue before the Court, which even held oral argument on the issue on May 30, 2019, and which proceeding has been transcribed. R. Doc. 197. Defendants, Plaintiff BMCC, Plaintiff ASE, and Intervenor Jung, have all argued the terms of the Policies are clear as written, but they have taken diametrically opposed interpretations: Defendants argue that BMCC, ASE, and Jung are neither additional nor named insureds, whereas BMCC and ASE argue they are additional insureds under the Policies, and Jung argues it is either

a named insured or an additional insured under the Policies and/or the Prime Contract. The Court, however, was quite specific in determining that on the showing made, and without further "course of conduct" evidence, it could not resolve the issue of the parties' intent with regard to whether the Subcontractors and the Owner were to be additional or named insureds under the Policies and the Prime Contract. R. Docs. 198 and 225. Thus, the Court found Defendants had not carried their burden of proof with regard to the Motions to Dismiss and the First Motion for Summary Judgment. *Id.*

After reviewing the record filings, including the transcript of oral argument and the prior rulings themselves, the Court presently finds no manifest error of law or fact in the Court's prior rulings. The arguments presented to this Court today were presented to the Court previously. There is no showing of "wholesale disregard" of either the law or facts. Moreover, the Court finds no showing of manifest injustice because the prior rulings were merely interlocutory and not final judgments. The parties have not been precluded from raising the issues in subsequent proceedings with the requisite evidentiary support. Because Defendants have failed to carry their burden of proof under Rule 59(e) to show either manifest error of law or fact or manifest injustice, this Court, sitting as a successor judge, declines to reconsider or clarify the Court's prior rulings.

**IT IS ORDERED** that the Motion to Reconsider and/or for Clarification of the Court's Order (R. Doc. 198) Denying Defendants' Motions to Dismiss, (R. Doc. 218), and the Motion to Reconsider and/or for Clarification of the Court's Order (R. Doc. 208) Denying Defendants' First Motion for Summary Judgment, (R. Doc. 225), both of which have been filed by Starr Surplus Lines Insurance Company and Lexington Insurance Company, are hereby **DENIED**.

New Orleans, Louisiana this 11th day of February, 2020.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE