**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE MCDONNEL GROUP, LLC** | **CIVIL ACTION NO: 18-1380 c/w 19-2230; 19-10462** |
| **VERSUS** | **(Applies to All Cases)** |
| **STARR SURPLUS LINES INSURANCE COMPANY AND LEXINGTON INSURANCE COMPANY** | **SECTION: T(1)** |

**ORDER**

Before the Court are five Motions for Partial Summary Judgment filed by defendants, Lexington Insurance Company ("Lexington") and Starr Surplus Lines Insurance Company ("Starr") (together, "Defendants").[1] Each of these Motions seeks the dismissal of certain claims asserted by plaintiffs, The McDonnel Group, LLC ("McDonnel"), The Jung, LLC ("Jung"), and All Star Electric, Inc. ("All Star") (collectively, "Plaintiffs") in relation to the six (6) loss events that occurred during the effective policy period under Defendants' insurance policies. Given the commonality of the facts and issues presented, the Court will address the Motions together.

The first Motion for Partial Summary Judgment seeks the dismissal of Plaintiffs' bad faith claims in relation to the loss event of April 21, 2017 (the "April 21 Event").[2] McDonnel filed an opposition,[3] as did Jung.[4] All Star joined in these oppositions.[5] Defendants filed a Reply.[6]

---

[1] R. Docs. 743, 745, 747, 749 & 754.
[2] R. Doc. 743.
[3] R. Doc. 779.
[4] R. Doc. 796.
[5] R. Doc. 812.
[6] R .Doc. 863.

The second Motion for Partial Summary Judgment seeks dismissal of Plaintiffs' bad faith claims in connection with an August 5, 2017 flood loss event (the "August 5 Event").[7] McDonnel[8] and Jung[9] filed oppositions. All Star joined in these oppositions.[10] Defendants filed a Reply.[11]

Defendants' third Motion for Partial Summary Judgment requests dismissal of Plaintiffs' bad faith claims related to a loss event on July 22, 2017 (the "July 22 Event").[12] Again, McDonnel[13] and Jung[14] opposed the Motion, and All Star has joined in these oppositions.[15] Defendants filed a Reply.[16]

Defendants' fourth Motion for Partial Summary Judgment seeks dismissal of Plaintiffs' bad faith claims arising out of a loss event on June 11, 2017, due to a roof leak (the "June 11 Event").[17] McDonnel[18] and Jung[19] filed oppositions, in which All Star joined.[20] Defendants have replied.[21]

Defendants also moved the Court for Partial Summary Judgment on Plaintiffs' claims related to loss events that occurred on March 10, 2017 (the "March 10 Event"), and March 27, 2017 (the "March 27 Event") (referred to together as the "March 2017 Events" where appropriate).[22] That Motion is two-fold. Defendants first request the dismissal of Plaintiffs' bad faith claims related to each of the March 2017 Events. Second, Defendants seek a summary

---

[7] R. Doc. 745.
[8] R. Doc. 782.
[9] R. Doc. 798.
[10] R. Doc. 815.
[11] R. Doc. 851.
[12] R. Doc. 747.
[13] R. Doc. 781.
[14] R. Doc. 803.
[15] R. Doc. 816.
[16] R. Doc. 857.
[17] R. Doc. 749.
[18] R. Doc. 780.
[19] R. Doc. 790.
[20] R. Doc. 814.
[21] R. Doc. 849.
[22] R. Doc. 754.

determination that the March 10 and March 27 Events are separate occurrences, rather than a single occurrence as claimed by Plaintiffs, under the applicable insurance policies.[23] McDonnel filed an opposition,[24] as did Jung,[25] and All Star has joined in these oppositions.[26] Defendants filed a Reply.[27]

Having considered the Motions, the memoranda of the parties, the applicable law, and the record the Court will DENY Defendants' Motions for Partial Summary Judgment as they related to Plaintiffs' bad faith claims. The Court will GRANT Defendants' Motion for Partial Summary Judgment in so far as the March 10 Event and March 27 Event are separate occurrences under the applicable insurance policies.

## BACKGROUND

This litigation arises out of several loss events at The Jung Hotel ("Jung Hotel" or "Hotel") during 2017 while it was undergoing renovations. Jung, the owner of the Jung Hotel, hired McDonnel as its general contractor for the Hotel's redevelopment and renovation in 2014 (the "Project"). Thereafter, McDonnel purchased Completed Value Construction All Risks Policies (collectively, the "Policy") from Defendants, which provided property damage coverage to the Project.[28] Each Defendant insured 50% of the risks under the Policy. The Policy's effective period ran from February 23, 2015, through February 23, 2017, but was extended by multiple endorsements to August 22, 2017.

Plaintiffs brought this suit seeking damages in relation to the six (6) loss events. Relevant to the instant Motions are Plaintiffs' claims that, following each of these loss events, Defendants

---

[23] R. Doc. 754.
[24] R. Doc. 778.
[25] R. Doc. 786.
[26] R. Doc. 811.
[27] R .Doc. 869.
[28] See the Policy, R. Doc. 743-3.

acted in bad faith in administering the insurance claims rendering them liable for statutory damages under Louisiana Civil Code Article 1997 and Louisiana Revised Statutes 22:1892 and 22:1973. With regard to the March 2017 Events, Plaintiffs assert that the losses on March 10, 2017, and March 27, 2017, constitute one occurrence under the Policy and are, thus, subject to a single occurrence deductible.

## LAW AND ANALYSIS

### I.   Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law."[30] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party.[31] After the movant meets his burden, the burden shifts to the non-movant to show the existence of a genuine issue for trial.[32] In doing so, the non-movant must submit "significant probative evidence" in support of his claim.[33] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[34] However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).
[30] *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc*., 882 F.2d 993, 996 (5th Cir. 1989)).
[31] *Celotex,* 477 U.S. at 323.
[32] *Gernain v. U.S. Bank Nat' Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).
[33] *State Farm Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).
[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[35] The Court notes that when this matter proceeds to trial, it will be tried to a jury.

## II.   Applicable Law

### A. Bad Faith Claims Under Louisiana Law

The parties do not dispute that Louisiana law governs this dispute. Louisiana law allows for the recovery of bad faith penalties pursuant to two statutes. Under Louisiana Revised Statute § 22:1892(A)(1), "All insurers issuing any type of contract…shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest."[36] Where an insurer fails to comply with the mandate of § 22:1892(A)(1), subsection (B)(1) of the statute subjects the insurer to penalties if its conduct is "found to be arbitrary, capricious, or without probable cause."[37] Thus, in order to establish a cause of action for penalties under § 22:1892, a claimant must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[38] Satisfactory proof of loss has been held to mean "that which is 'sufficient to fully apprise the insurer of the insured's claims.'"[39] Similarly, Louisiana Revised Statute § 22:1973 provides than an insurer "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."[40] "Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach."[41] Additionally, if an insurer fails "to pay the amount

---

[35] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[36] La. R.S. § 22:1892(A)(1).
[37] *Id.*
[38] *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009).
[39] *La. Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008) (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La. 1985)).
[40] La. R.S. § 22:1973(A).
[41] *Id.*

of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant" it is subject to additional penalties.[42] The two statutes prohibit "virtually identical" conduct, and the primary difference between them is the time period for payment of claims.[43] Louisiana Civil Code article 1997 provides that "[a]n obligor in bad faither is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."[44]

"'When the insured claims penalties for refusal to pay a claim timely, the inquiry usually focuses on whether the insurer acted reasonably in its adjustment of the claim based on the facts known or that should have been known by the insurer. Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific.'"[45] In a summary judgment context, dismissal of a plaintiff's bad faith claims is not appropriate where they depend on factual determinations concerning the reasonableness of the insurer's actions.[46]

## B.  Insurance Policy Interpretation Under Louisiana Law

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[47] "The judiciary's role in interpreting insurance contracts is to ascertain the common intent

---

[42] La. R.S. § 22:1973(B)(5); 22:1973(C).

[43] *See Johnson v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 1745497, at *4 (E.D. La. May 16, 2012) (Africk, J.) (citing *Korbel v. Lexington Ins. Co.*, 308 Fed.Appx. 800, 803 (5th Cir. 2009)).

[44] La. C.C. art. 1997.

[45] *Melendez v. Southern Fidelity Insurance Company*, 503 F.Supp.3d 504, 511 (E.D. La. Nov. 25, 2020) (quoting 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, LA. CIV. L. TREATISE: INSURANCE LAW AND PRACTICE § 11:15 (4th ed. 2020)).

[46] *See Hartenstein v. State Farm Fire and Cas. Ins. Co.*, No. 07-4594, 2008 WL 2397713, at *3 (E.D. La. June 10, 2008) (Africk, J.); *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009) (A determination of whether an insurer's failure to pay a claim was arbitrary and capricious is a finding of fact.).

[47] *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So.2d 96, 99 (La. 2004) (citations omitted); see also *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659-660 (5th Cir. 2005).

of the parties to the contract" by construing words and phrases "using their plain, ordinary and generally prevailing meaning...."[48] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[49] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[50] Accordingly, "[c]ourts should not 'create an ambiguity where none exists.'"[51] That said, ambiguity in an insurance policy exists where the "policy provision is susceptible to two or more reasonable interpretations, meaning that each of the alternative interpretations must be reasonable."[52]

### III.   Discussion

#### 1.   The April 21 Event

On April 21, 2017, the Jung Hotel experienced damage from a water event when a drain pipe overflowed after a drywall contractor washed drywall compound into the HVAC system's condensation drain.[53] The loss was reported to Defendants by McDonnel's insurance broker on May 2, 2017. Defendants retained Aaron Prefontaine to investigate and adjust the damage related to the April 21 Event.[54] Prefontaine sent a request for information concerning the April 21 Event to McDonnel on May 4, 2017. On May 9, 2017, Prefontaine conducted an inspection of the Project site to gather additional information and evaluate the loss.[55] On May 30, 2017, Prefontaine issued an adjustment report (the "May 30, 2017 Report") to Defendants detailing the damages caused by

---

[48] *Mayo*, 869 So.2d at 99 (citations omitted).
[49] *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting La. C.C. art. 2046).
[50] *Id.* at 345–46 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).
[51] *Id.* at 346 (quoting *Cadwallader*, 848 So.2d at 580).
[52] *Id.* (quoting *Cadwallader*, 848 So.2d at 580).
[53] R. Doc. 743-4.
[54] See R. Doc. 743-5.
[55] R. Doc. 743-2, ¶ 6.

the April 21 Event and evaluating Defendants' potential net exposure, which exceeded the Policy's $50,000 deductible.[56] On September 27, 2017, Prefontaine received McDonnel's first batch of claimed invoices for the April 21 Event.[57] Prefontaine then prepared a "Summary of Claim" dated October 9, 2017, calculating the total net claim to be $58,102.44.[58] The Summary of Claim was sent to Defendants on October 11, 2017, and noted that the Policy's deductible had been exceeded by the "costs incurred to date."[59] Defendants issued a proof of loss to McDonnel on November 20, 2017, in the amount of $8,526.50.[60] McDonnel returned the signed and notarized proof of loss to Defendants on December 12, 2017.[61] Defendants made their first payment to McDonnel on December 13, 2017.[62] Prefontaine continued to adjust the claim and on February 22, 2018, Defendants sent another proof of loss to McDonnel for signing.[63] McDonnel signed and notarized the proof of loss and returned it to Defendants on April 20, 2018.[64] Defendants paid McDonnel under the second proof of loss on April 24, 2018.[65]

Defendants contend that they diligently administered the April 21 Event claim and issued payment within days of receiving McDonnel's signed proof of loss. Defendants assert that any delay between evaluating the claimed invoices sent by McDonnel to Prefontaine on September 27, 2017, and the November 20, 2017 proof of loss was caused by McDonnel's own actions in submitting invoices related to several of the Loss Events in dispute. Plaintiffs contend that

---

[56] R. Doc. 796-2.
[57] R. Doc. 743-2, ¶ 7. Plaintiffs contend the claimed invoices were sent to Prefontaine on September 16, 2017. Defendants respond that the materials were sent to an outdated email address and, therefore, were not received until September 27. Despite the dispute, at least one Plaintiff, Jung, has used September 27, 2017, as the operative date for purposes of opposing the Motion. See R. Doc. 796, p. 2, n. 4.
[58] R. Doc. 796-4.
[59] *Id.*
[60] R. Doc. 796-5.
[61] R. Doc. 743-14.
[62] R. Doc. 796-6.
[63] R. Doc. 796-7.
[64] R. Doc. 796-15.
[65] R. Doc. 796-8.

Defendants had notice of the damages owed to them by October 11, 2017, at the latest when Prefontaine provided the Summary of Claim to Defendants. Further, Plaintiffs contend that requiring McDonnel to sign and notarize the proofs of loss before payment would be issued was an unreasonable and unnecessary prerequisite to payment being issued.

The Court finds that the competing evidence creates genuine issues of material fact concerning when Defendants had sufficient notice of Plaintiffs' claims and, as a result, whether Defendants timely paid the claims. Further, if the payments are found to be untimely, the determination of whether Defendants acted arbitrarily, capriciously, or without probable cause in that delay is a fact issue better reserved for the jury at trial. Accordingly, Defendants' Motion for Partial Summary Judgment on Plaintiffs' bad faith claims arising out of the April 21, 2017 Event is DENIED.

## 2. The August 5 Event

On August 5, 2017, the Project experienced water damage to its lobby and basement due to flooding caused by a heavy rain event.[66] McDonnel reported the August 5 Event to Defendants and again Prefontaine conducted a site inspection and requested information to adjust the claim.[67] McDonnel's first claim submission in connection with the August 5 Event included total costs in the amount of $1,068,519.70 and was received by Prefontaine on September 27, 2017.[68] McDonnel submitted additional invoices for the August 5 Event to Prefontaine on October 6, 2017.[69] Thereafter, a dispute between Defendants and Plaintiffs arose as to the applicable deductible under the Policy. Defendants contend that the deductible is $3,443,475. Plaintiffs assert that the applicable deductible is $500,000. Plaintiffs contend that the total amount of physical damages is

---

[66] R. Doc. 745-2, ¶ 6.
[67] Id. at ¶¶ 7-9.
[68] R. Doc. 745-2, ¶ 17.
[69] Id. at ¶ 18.

now $2,656,667.02 and that they are also entitled to extended general conditions damages (i.e., delay damages) as a result of the August 5 Event.[70] Defendants have not paid any amount of Plaintiffs' claims for the August 5 Event.

The Court acknowledges that the issue of which deductible should be applied – $500,000 or $3,443,475 – has not yet been resolved by the Court. Regardless, that issue is not before the Court in the present Motion. As such, genuine issues of material fact are present concerning whether Defendant's late or non-payment for the August 5 Event making summary judgment inappropriate for purposes of this Motion. Moreover, the Court notes that even if the lower deductible ultimately governs, genuine issues of material fact as to whether Defendants' belief that the higher deductible applied, and justified their refusal to pay, would further make summary judgment inappropriate here. Accordingly, Defendants' Motion is DENIED.

### 3.  The July 22 Event

On July 22, 2017, the Project experienced leaks in its roof, resulting in water damage on the 10th and 17th floors of the Hotel. Defendants claim that McDonnel failed to properly report the loss and instead informed Prefontaine of the issue when he was at the Project site on August 10, 2017, for an unrelated matter.[71] Defendants further contend that McDonnel failed to notice the loss formally and submit costs from the July 22 Event as a separate occurrence under the Policy. Rather, Defendants note that McDonnel combined the July 22 Event claim submissions with the submissions for the April 21 and June 11 Events that were received by Prefontaine on September 27, 2017. Defendants allege that the commingling of the submissions were McDonnel's "intentional effort to avoid multiple deductibles."[72] Defendants state that they asked McDonnel to

---

[70] R. Doc. 667-1, n. 3.
[71] R. Doc. 747-1.
[72] R. Doc. 747-1, p. 3.

make a separate claims submission to remedy any confusion before the losses sustained in the July 22 Event and other roof leak events being adjusted, but McDonnel refused.[73] Defendants argue that McDonnel's obstructionist behavior prevented them from being able to adjust the claim properly. Nonetheless, despite the obstacles, Defendants issued a proof of loss to Plaintiffs on December 5, 2017.[74] Plaintiffs' claims on the July 22 Event were then paid on December 13 and 14, 2017.[75] A second round of payments was made by Defendants on April 24 and 26, 2018 after Prefontaine determined additional costs were owed. Defendants allege that a large portion of the claims paid for the July 22 Event was based on incorrect or outright fabricated fees that McDonnel represented it was entitled to under the Project contract.

Plaintiffs assert that Defendants received adequate proof of loss on August 10, 2017, when Prefontaine was notified of the July 22 Event and he conducted an inspection of the damage.[76] Additionally, Plaintiffs argue that the September 27, 2017 claims submission to Prefontaine clearly listed the July 22 Event invoices separate and apart from those related to other loss events, providing additional notice of the claims to Defendants.[77]

The Court finds that these disputed facts, which directly relate to the sufficiency of Plaintiffs' proof of loss to Defendants, and thus bear on the timeliness of Defendants' payments, warrants the denial of summary judgment on Defendants Motion.

### 4. **The June 11 Event**

On June 11, 2017, the Jung Hotel sustained water damage from the 10th floor to the 2nd floor as a result of roof leaks.[78] McDonnel reported the loss to its broker on June 30, 2017.

---

[73] R. Doc. 747-1.
[74] R. Doc. 747-1, p. 6.
[75] R. Doc. 747-1, p. 6; R. Doc. 803, p. 2.
[76] R. Doc. 781.
[77] R. Docs. 781, 803.
[78] R. Doc. 749-1.

McDonnel sent its claims submissions related to the June 11 Event to Prefontaine, who received them on September 27, 2017. Defendants assert that this claim submission was comingled with invoices related to other loss events, thus creating confusion and delay that was no fault of their own. Defendants sent a proof of loss to McDonnel on November 20, 2017. An initial payment was made by Defendants on December 12, 2017. On February 8, 2018, Prefontaine send an analysis of additional undisputed amounts owed to Defendants. A second proof of loss was sent by Defendants on February 22, 2018. A final payment for the June 11 Event was made to McDonnel on April 24, 2018.

Here, again, in line with the conflicting versions of events described in the sections above, the parties assert disputed facts to support their positions. Defendants contend that Plaintiffs' own actions and obstructionist behavior is to blame for the prolonged adjustment of the June 11 Event claims. Plaintiffs assert that Defendants had sufficient notice of their losses and failed to make payment timely. Further, the reasonableness of the parties' actions under the circumstances are fact issues that must be resolved by the jury. The Court, therefore, finds that genuine issues of material fact prevent summary judgment in favor of Defendants.

5. **The March 10 and 27 Events**

In this Motion, Defendants seek two summary rulings. Like the Motions discussed above, Defendants seek dismissal of Plaintiffs' bad faith claims related to the allegedly improper adjustment of their claims arising from the March Events. Defendants also move the Court to determine whether the second loss event, on March 27, 2017, is a separate "occurrence" under the Policy.

On March 10, 2017, the Hotel sustained water damage to electrical busses when water escaped from improperly capped water lines on the building's interior.[79] McDonnel provided a notice of loss to Defendants on March 13, 2017.[80] Prefontaine conducted a site inspection on March 14-15, 2017.[81] McDonnel provided documentation to Defendants for the costs to replace the damaged bus ducts on March 22, 2017.[82] On March 27, 2017, rainwater allegedly infiltrated the elevator pits in the Hotel's basement where elevator equipment was stored causing damage.[83] At that time, the pumps in the Hotel's basement were not energized because the building was running on limited backup power due to the damage to the electrical system caused by the March 10 Event. On April 3, 2017, Prefontaine provided Defendants with an initial advice report on the March 10 Event the claims, which included estimates for initial cleanup, electrical components, installation, expedited manufacturing and shipping, expedited labor, and rental equipment, totaling $450,000.[84] On June 1, 2017, Prefontaine issued a second status report to Defendants, which indicated that he was waiting on additional documentation from McDonnel related to the expediting expenses for the electrical bus equipment.[85] On July 31, 2017, McDonnel submitted a "formal claim submission" to Defendants.[86] That submission contained invoices totaling $271,305 in costs related to replacement and repairs of the elevators that were damaged as a result of the March 27 Event.[87] On August 21, 2017, Prefontaine prepared an updated report recommending that Defendants pay $400,000 to McDonnel for the March 10 Event losses.[88] Defendants approved

---

[79] R. Doc. 754-1.
[80] R. Doc. 754-1; R. Doc. 778.
[81] R. Doc. 754-1.
[82] R. Doc. 778-2.
[83] R. Doc. 778; R. Doc. 754-1 (Defendants submit that there is no evidence of a rain event and, thus, contest whether the March 27 Event occurred as alleged).
[84] R. Doc. 786-2.
[85] R. Doc. 754-13.
[86] R. Doc. 754-14.
[87] *Id.*
[88] R. Doc. 754-21.

the recommendation and a proof of loss was issued to McDonnel on August 31, 2017.[89] Defendants claim that the $400,000 payment to McDonnel represents an overpayment because Prefontaine later determined that McDonnel was only owed $300,408.64 in net reimbursable costs for the March 10 Event.[90]

Defendants take the position that none of the $271,305 in damages claimed for the March 27 Event are owed to Plaintiffs because that event was a separate occurrence under the Policy and, therefore, subject to a minimum flood deductible of $500,000.[91] Despite of the flood deductible not being met, Defendants maintain nothing is owed because McDonnel never submitted a formal notice of loss for the March 27 Event and the informal notice provided to Prefontaine was untimely.

Plaintiffs submit that Defendants failed to pay them timely for the March 10 Event losses, which they had adequate notice of no later than Prefontaine's June 1, 2017 report. As such, whether the March 10 and March 27 Events are considered to be one occurrence does not affect the viability of their bad faith claims at this summary judgment stage. The Court finds that the competing evidence presented by the parties creates genuine issues of material fact over the sufficiency of the notice provided by Plaintiffs of their claims as well as the reasonableness and timeliness of Defendants in administering the March 10 Event claims. Defendants' summary judgment on Plaintiffs' bad faith claims is DENIED.

Whether the March Events constitute a single or separate "occurrences" is determined by the Policy's language. Occurrence is defined in the Policy as follows:

> The term "occurrence" shall mean any one loss, disaster or casualty,
> or series of losses, disasters or casualties arising out of one event.
> When the word applies to loss or losses from the perils of tornado,

---

[89] R. Doc. 754-7.
[90] R. Doc. 754-1.
[91] R. Doc. 754-1.

14

cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, if such perils are covered by this policy, one event shall be construed to be all losses arising during a continuous period of seventy-two (72) hours. When filing proof of loss, the Insured may elect the moment at which the seventy-two (72) hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the covered property or interests occurs.[92]

The Court finds that the Policy's definition of "occurrence" to be unambiguous. It clearly contemplates that the "loss, disaster or casualty" must arise from a single event. Here, the losses McDonnel sustained in the March 27 Event resulted from rainwater entering the Hotel, not the inability to pump the water out. Accordingly, the Court cannot say that the loss on March 27, 2017, arose out of the improperly capped water lines on March 10, 2017. The Court, therefore, GRANTS Defendants' Motion for Partial Summary Judgment on this issue and finds that the March 10 Event and March 27 Event are separate occurrences under the Policy.

## CONCLUSION

For the reasons above,

**IT IS ORDERED** that Defendants' Motions for Partial Summary Judgment[93] are **DENIED** to the extent they seek the dismissal of Plaintiffs' bad faith claims.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment as to the March 10 and March 27 Events constituting two occurrences[94] is **GRANTED**.

New Orleans, Louisiana this 31st day of March, 2023.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[92] R. Doc. 754-3.
[93] R. Docs. 743, 745, 747, 749 & 754.
[94] R. Doc. 754.