UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE MCDONNEL GROUP, LLC                     CIVIL ACTION NO: 18-1380 c/w 19-
                                                          2230; 19-10462
VERSUS                                          (Applies to All Cases)

STARR SURPLUS LINES INSURANCE
COMPANY AND LEXINGTON                              SECTION: T (1)
INSURANCE COMPANY

ORDER AND REASONS

This matter is before the Court on what are essentially cross-motions for summary judgment concerning Intervenor Plaintiff The Jung, LLC's ("Jung" or the "Owner") status as an additional insured on insurance policies (collectively the "Policy") between Plaintiff The McDonnel Group, LLC ("McDonnel" or the "Contractor") and Defendants Starr Surplus Lines Insurance Company and Lexington Insurance Company (collectively "Defendants"). Jung moves for partial summary judgment on this issue, asking the Court to hold that it is an additional insured under the Policy as a matter of law. R. Doc. 759. On the other hand, Defendants seek summary judgment on all of Jung's claims, arguing primarily that Jung is not an additional insured under the Policy and has no right of action against Defendants as a third-party to McDonnel's claims. R. Doc. 821. The parties have each filed briefs in opposition and reply memoranda. *See* R. Docs. 799; 889; 865; 924. Having considered the parties' briefing and the record along with the applicable law, the Court will DENY Jung's motion for partial summary judgment, and GRANT Defendants' motion for summary judgment.

I.      BACKGROUND

This litigation arises out of six loss events at the Jung Hotel (the "Hotel") that occurred during 2017 while the Hotel was undergoing renovations. Jung, as the owner of the Hotel, hired

1

McDonnel in 2014 as its general contractor for the Hotel's redevelopment and renovation (the "Project"). McDonnel contracted with two subcontractors, Bernhard Mechanical Construction Company, LLC[1] and All Star Electric, Inc. (collectively the "Subcontractors") to complete work on the Project. McDonnel also purchased Completed Value Construction All Risks Policies from Defendants, which provided property damage coverage for the Project. Each Defendant insured 50% of the risks under the Policy. The Policy's effective period ran from February 23, 2015, through February 23, 2017, but was extended by multiple endorsements to August 22, 2017.

McDonnel filed the instant suit against Defendants on February 9, 2018, claiming property damage and repair costs related to the six loss events, as well as costs for delays to the renovation project and to expedite work on the project. The Subcontractors filed separate complaints against Defendants which were consolidated into this action. *See* R. Docs. 139; 189. The Court granted Jung leave to intervene in this action and Jung filed a complaint in intervention against Defendants, asserting it is entitled to damages it sustained due to delays in completion of the Project. R. Doc. 209. Jung argues these damages were caused by Defendants' bad faith, arbitrary, and capricious failure to pay out McDonnel's claims within the requisite time periods set forth in Louisiana Revised Statutes §§ 22:1892 and 1973. *Id.* at 4–5.

Defendants filed motions to dismiss the Subcontractors' complaints, R. Docs. 161; 162, as well as a motion for summary judgment on Jung's claims, R. Doc. 110, arguing that those parties are not additional insureds under the Policy purchased from Defendants by McDonnel. The Court denied Defendants' motions to dismiss the Subcontractors, holding the Policy to be ambiguous as to whether the Subcontractors are additional insureds. R. Doc. 198. Subsequently, the Court denied Defendants' motion for summary judgment on Jung's claims as well, holding that "[f]or the same

---

[1] Bernhard Mechanical Construction Company, LLC's claims have been previously settled and dismissed. *See* R. Doc. 730.

2

reasons, the Polic[y is] equally ambiguous as to whether Jung is an additional insured." R. Doc. 208 at 8–9.

Defendants moved for reconsideration of the order denying summary judgment on Jung's claims, R. Doc. 225, which this Court also denied, R. Doc. 660. The Court explained it "presently f[ound] no manifest error of law or fact" in its prior ruling, but also noted the parties were not "precluded from raising the issues in subsequent proceedings with the requisite evidentiary support." *Id.* at 8. Jung and Defendants now each ask the Court to revisit the question of whether Jung is an additional insured under the Policy and to enter summary judgment on that issue in their favor. R. Docs. 759; 821.

## II.   APPLICABLE LAW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation and internal quotations removed). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

3

In *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583 (La. 2007), the Louisiana Supreme Court laid out the comprehensive framework for interpreting insurance policies under Louisiana law. The *Sims* Court explained, "[i]n analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Id.* at 588–89 (citations removed). According to the general rules of interpretation of contracts, the court must determine the parties' common intent. *Id.* at 589 (citations removed); *see also* La. Civ. Code art. 2045. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See* La. Civ. Code art. 2046. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See* La. Civ. Code art. 2047.

An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. *See Sims*, 956 So. 2d at 589.  One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See* La. Civ. Code art. 2050; *Hill v. Shelter Mutual Insurance Co.*, 935 So. 2d 691, 694 (La. 2006). When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See* La. Civ. Code art. 2046.  If, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. *See* La. Civ. Code art. 2056.

The determination of whether a contract is clear or ambiguous is a question of law. *See, e.g.,* *Edwards v. Daugherty*, 883 So. 2d 932, 941 (La. 2004).

## III.    DISCUSSION AND ANALYSIS

This Court previously found the Policy ambiguous as to whether Jung is an additional insured for the same reasons that it found the Policy ambiguous as to whether the Subcontractors are additional insureds. *See* R. Doc. 208 at 8; R. Doc. 198. However, the Court stated that the parties were not precluded from reraising this issue at a later time. *See* R. Doc. 660 at 8. Accordingly, the Court will first reexamine this conclusion.

### A.  Relevant Contractual Provisions

The Policy defines "Additional Insured(s)" as follows:

> To the extent required by any contract or subcontract for an Insured Project*[, here, the Jung Hotel], and then only as their respective interest may appear, all owners, all contractors and subcontractors of every tier, tenants of the Insured Project* and any other individual or entity specified, in such contract or subcontract are recognized as Additional Insured's (sic) hereunder.

R. Doc. 161-3 at 16. Therefore, the Court must look to any contracts or subcontracts for the Project to determine what individuals or entities, if any, are recognized as additional insureds under the Policy. All parties point to the contract between Jung, the Owner, and McDonnel, the Contractor, (the "Prime Contract") as the applicable contract for the Project. *See* R. Doc. 161-1.

The Prime Contract provides "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of the A[I]A[2] Documents A201-2007." *Id.* at 14. The Prime Contract thus incorporates the American Institute of Architecture's ("AIA") recommended provisions for construction contracts in Article 11 Documents A201-2007 ("Article 11"). *See id.* at 48–86.

---

[2] The Prime Contract actually references "Article 11 of the ALA (sic)[.]" However, the parties do not seem to contest the fact that this is a typo and was intended to refer to Article 11 of the AIA.

Article 11 contains three relevant provisions. First, Section 11.1.1 (the "Contractor's Liability Insurance clause") provides "[t]he Contractor shall purchase . . . such insurance as will protect the Contractor from claims . . . for which the Contractor may be legally liable." *Id.* at 77. Second, Section 11.3.1 (the "Owner's Property Insurance clause"), provides as follows:

> Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of material supplied or installed by others . . .. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

*Id.* at 78. Finally, Section 11.3.1.3 (the "Contractor's Property Insurance clause") provides, in pertinent part:

> If the Owner does not intend to purchase insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner.

*Id.* Accordingly, under the Owner's Property Insurance clause, if not otherwise provided in the Prime Contract, Jung shall purchase property damage insurance coverage protecting its own interests in the project as Owner, as well as the interests of McDonnel, the Subcontractors, and any sub-subcontractors.  However, if the Prime Contract provides for a party other than the Owner to purchase property damage insurance, or if the Owner does not purchase coverage as required by the Owner's Property Insurance clause, the Court must look to the Contractor's Property Insurance clause.

## B.  Ambiguities as to the Additional Insured Status of the Subcontractors

The Court previously found several ambiguities in these provisions when considering whether the Subcontractors are additional insureds under the Policy. *See* R. Doc. 198. First, the

Court found the Policy's definition of "Additional Insured(s)" to be ambiguous as to exactly what the Prime Contract must "require" for an entity to qualify as an additional insured (the "First Ambiguity"). *Id.* at 4–5. That is, the Court reasoned it is unclear whether the Prime Contract must require both that a particular party purchase insurance *and* that the entity be named as an additional insured on that insurance, or only that the entity be named as an additional insured on an insurance policy for the Project, with no relevance to whether a party was required to purchase the insurance.[3] *Id.* at 5.

Second, the Court found the Prime Contract's provision that "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 . . ." to be ambiguous in that it is unclear whether this provision is intended to require only that McDonnel purchase liability insurance under the Contractor's Liability Insurance clause, or whether it is also intended to shift the responsibility of purchasing property damage insurance from Jung, under the Owner's Property Insurance clause, to McDonnel, under the Contractor's Property Insurance clause (the "Second Ambiguity"). *Id.* at 7.

Finally, the Court found it to be ambiguous whether the requirement in the Owner's Property Insurance clause that "[t]his insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project" refers only to policies procured by an owner under that clause, or whether the term "[t]his insurance" also refers to policies procured by a contractor under the Contractor's Property Insurance clause (the "Third Ambiguity"). *Id.*

---

[3] Said in another way, the parties agree that the Policy requires there to be a qualifying contract or subcontract for the Project that requires an entity to be an additional insured for the Policy to recognize that entity as an additional insured. However, Defendants assert the *additional* requirement that a qualifying contract or subcontract must also require the contracting party to purchase insurance in the first place for any entities that qualifying contract or subcontract requires to be additional insureds to be recognized as additional insureds under the Policy.

### C. Ambiguities as to the Additional Insured Status of Jung

Assuming without deciding at this time that the Policy is in fact ambiguous as to whether the Subcontractors are additional insureds as laid out *supra*, the Court will reconsider its prior determination that the Policy is ambiguous as to whether Jung is an additional insured "[f]or the same reasons." R. Doc. 208 at 8.

#### 1. The Third Ambiguity

The Owner's Property Insurance clause requires "[t]his insurance" purchased by the owner under that clause to protect the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors. The Court previously found this clause ambiguous as to whether that requirement also applies to policies procured by a contractor under the Contractor's Property Insurance clause. However, the Contractor's Property Insurance cause requires insurance purchased under that clause to protect only the interests of Contractor, Subcontractors and Sub-subcontractors, with no mention of the interests of the Owner. Under the doctrine of *inclusio unius est exclusio alterius*, this Court cannot ignore the drafters' explicit omission of the Owner in the Contractor's Property Insurance clause. Reading the Owner's Property Insurance clause's requirement that the Owner's interests be protected to also apply to the Contractor's Property Insurance clause would do just that. The Prime Contract, including the incorporated Article 11 provisions, is thus unambiguous on this point: insurance purchased by Jung under the Owner's Property Insurance clause must protect the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors. However, insurance purchased by McDonnel under the Contractor's Property Insurance clause need protect only the interests of the Contractor, Subcontractors and Sub-subcontractors—*not* the Owner.

### 2.  The Second Ambiguity

As explained *supra*, the Prime Contract only "requires" the interests of Jung to be protected if Jung, the Owner, purchases property damage insurance, whereas the interests of the Subcontractors must be protected if property damage insurance is purchased by either Jung or McDonnel. Therefore, Jung and the Subcontractors are differently situated under the terms of the Prime Contract, and a provision that may be ambiguous as to the Subcontractors may be completely unambiguous as to Jung, and vice versa.

The Court previously found it ambiguous whether the Prime Contract requires only that McDonnel purchase liability insurance as dictated by the Contractor's Liability Insurance clause, or whether it also shifts the responsibility for purchasing property damage insurance from Jung under the Owner's Property Insurance clause to McDonnel under the Contractor's Property Insurance clause. Thus, it is unclear whether it is "otherwise provided" in the Prime Contract, *see* Owner's Property Insurance clause, R. Doc. 161-1 at 78, that someone other than the Owner would purchase property damage insurance for the Project.

As an initial note, the fact that McDonnel did in fact purchase the property liability insurance in this case would seem to cure any ambiguity as to the parties' intention about who would purchase property damage insurance under the Prime Contract. Nonetheless, even presuming that there is an ambiguity, it is irrelevant to Jung's status as an additional insured under the Policy. The Owner's Property Insurance clause applies only when an owner purchases property damages insurance. But the Contractor's Property Insurance clause applies both where the relevant contract provides for someone other than the owner to purchase property damage insurance *and* where the contract requires an owner to purchase property damage insurance "[i]f the Owner does not intend to purchase insurance required by the contract[.]" R. Doc. 161-1 at 78. Here, there is no

evidence that Jung intended to purchase property damage insurance for the Project, and Jung in fact did not do so. Accordingly, the Contractor's Property Insurance clause, not the Owner's Property Insurance clause, applies in this case, and the Prime Contract thus does not "require" that Jung be an additional insured on McDonnel's Policy with Defendants. Therefore, the Second Ambiguity previously found by the Court does not create any ambiguity as to whether Jung is an additional insured under the terms of the Policy.

### 3. The First Ambiguity

Finally, the Court previously found it ambiguous whether, for an entity to qualify as an additional insured under the Policy, the Prime Contract must require both that a particular party purchase insurance *and* that the entity be named as an additional insured on that insurance, or only that the entity be named as an additional insured on an insurance policy for the Project, with no relevance to whether a party was required to purchase the insurance. R. Doc. 198 at 5. This question creates an ambiguity as to whether the Subcontractors are additional insureds because it is ambiguous whether the Contractor's Property Insurance clause *requires* a contractor to purchase insurance, or whether it merely *permits* a contractor to purchase insurance when "the Owner does not intend to purchase insurance required by the Contract." R. Doc. 161-1 at 78. The Contractor's Property Insurance clause states "[t]he Contractor *may* then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work. . .." *Id.* (emphasis added). Accordingly, the Court essentially found it ambiguous whether the "may" in this clause is directive or permissive.[4] R. Doc. 198 at 5.

---

[4] However, the Court notes La. Code Civ. Proc. Ann. art. 5053, which states "[w]ords and phrases are to be read in their context, and are to be construed according to the common and approved usage of the language employed. The word 'shall' is mandatory, and the word 'may' is permissive."

Assuming this is in fact an ambiguity as to the Subcontractors, it creates no ambiguity as to Jung. As to the subcontractors, presuming that it is ambiguous whether the Prime Contract requires McDonnel to purchase property damage insurance as discussed *supra*, if Defendants are correct that the Policy will only recognize the Subcontractors as additional insureds if McDonnel was required to purchase the Policy, then whether Subcontractors are additional insureds rides on whether the Contractor's Property Insurance clause requires McDonnel to purchase insurance.

But as to Jung, the parties agree a minimum requirement for the Policy to recognize an entity as an additional insured is that that entity must be required to be an additional insured under a contract or subcontract for the Project. And, as discussed *supra*, it is unambiguous that the Prime Contract does not require that Jung be named an additional insured under the Policy where, as here, insurance is purchased by the Contractor, not the Owner. Accordingly, the First Ambiguity is not ambiguous as to whether Jung is an additional insured under the Policy.

### D. Conclusion

Thus, the Court concludes that it erred when it previously held the Policy to be ambiguous as to whether Jung is an additional insured "[f]or the same reasons" that it is ambiguous as to the Subcontractors. R. Doc. 208 at 8. Finding no other relevant ambiguities, the Court holds that the Policy is unambiguous as to Jung, and that Jung is not an additional insured under the Policy. Jung does not make any argument that it is entitled to any relief in this action should the Court find that it is not an additional insured under the Policy.[5]  Thus, the Court need not address the parties remaining arguments. Accordingly, the Court concludes there are no genuine disputes of material

---

[5] McDonnel makes much of its argument that it and Jung had an oral agreement that McDonnel would name Jung as an additional insured under its Policy with Defendants. *See* R. Doc. 759-1 at 11–15. However, under Louisiana law, "[w]hen the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written." La. Civ. Code art. 2046. The Court has concluded that the Policy is unambiguous as to the fact that Jung is not an additional insured. Accordingly, the Court may not look beyond the four corners of that agreement.

fact as to this issue, and Defendants are entitled to summary judgment in their favor on all of Jung's claims as a matter of law.

**IV.   CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Jung's motion for partial summary judgment, R. Doc. 759, is **DENIED**. **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Jung's claims, R. Doc. 821, is **GRANTED**. Accordingly, judgment is entered on those claims in favor of Defendants. Additionally, Jung's other pending motions, R. Docs. 761; 763; 770; 772; 774; 902; 908, are **DENIED AS MOOT**.

New Orleans, Louisiana, this 19th day of September, 2023.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**