UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE MCDONNEL GROUP, LLC** | **CIVIL ACTION NO: 18-1380 c/w 19-2230; 19-10462** |
| **VERSUS** | **(Applies to All Cases)** |
| **STARR SURPLUS LINES INSURANCE COMPANY AND LEXINGTON INSURANCE COMPANY** | **SECTION: T (1)** |

**ORDER AND REASONS**

The Court has before it two related motions. First, Defendants Starr Surplus Line Insurance Company and Lexington Insurance Company (collectively "Defendants) seek partial summary judgment on the "Delay-Related Extended [General] Conditions Claims" brought by Plaintiffs The McDonnel Group, LLC ("McDonnel") and Consolidated Plaintiff All Star Electric, Inc. ("ASE") (collectively "Plaintiffs"). R. Doc. 823. Second, Defendants seek summary judgment on all claims brought against them by ASE. R. Doc. 837. Plaintiffs have responded in opposition, R. Docs. 842; 843, and Defendants have filed reply memoranda, R. Docs. 886; 888. Having considered the parties' briefing, the record, and the applicable law, the Court will GRANT Defendants' motions.

I.   **BACKGROUND**

This litigation arises out of six loss events at the Jung Hotel (the "Hotel") that occurred during 2017 while the Hotel was undergoing renovations. Intervenor Plaintiff The Jung, LLC ("Jung")[1], the owner of the Hotel, hired The McDonnel Group, LLC ("McDonnel") in 2014 as its general contractor for the Hotel's redevelopment and renovation (the "Project"). McDonnel contracted with two subcontractors, Bernhard Mechanical Construction Company, LLC

---
[1] Jung's claims have been previously dismissed. *See* R. Doc. 990.

1

("BMCC") [2] and ASE (collectively the "Subcontractors") to complete work on the Project. McDonnel also purchased Completed Value Construction All Risks Policies from Defendants, which provided property damage coverage for the Project. Each Defendant insured 50% of the risks under the Policy. The Policy's effective period ran from February 23, 2015, through February 23, 2017, but was extended by multiple endorsements to August 22, 2017.

McDonnel filed the instant suit against Defendants on February 9, 2018, claiming property remediation and repair costs related to the six loss events, as well as "extended general conditions" costs incurred because of delays to the Project caused by the loss events, and bad faith penalties under La. R.S. §§ 22:1973 and 22:1892. ASE filed a separate complaint against Defendants that was consolidated into this action, *see* R. Doc. 139, also seeking extended general conditions costs and bad faith penalties.[3] R. Doc. 837-6. Defendants now move this Court for summary judgment on McDonnel's extended general conditions claims and all of ASE's claims. R. Docs. 823; 837.

## II.   APPLICABLE LAW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am.*

---

[2] BMCC's claims have been previously settled and dismissed. *See* R. Doc. 730.
[3] ASE originally also brought claims for property remediation and repair costs related to the loss events. R. Doc. 837-6 at 7–9. However, ASE acknowledges that those claims were paid after the initiation of this suit. R. Doc. 843-3 at 3. Therefore, only ASE's general extended conditions and bad faith claims remain.

*Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation and internal quotations removed). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

In *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583 (La. 2007), the Louisiana Supreme Court laid out the comprehensive framework for interpreting insurance policies under Louisiana law. The *Sims* Court explained, "[i]n analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Id.* at 588–89 (citations removed). According to the general rules of interpretation of contracts, the court must determine the parties' common intent. *Id.* at 589 (citations removed); *see also* La. Civ. Code art. 2045. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See* La. Civ. Code art. 2046. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See* La. Civ. Code art. 2047. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See* La. Civ. Code art. 2046.

Under Louisiana law, the insured bears the burden of establishing that a claim falls within the policy coverage. *See, e.g.*, *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 362 (5th Cir. 2010); *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000). If the insured carries this burden, the insurer

3

then bears the burden of proving the applicability of an exclusionary clause within the policy. *Doerr*, 774 So. 2d at 124.

### III. DISCUSSION AND ANALYSIS

The primary issue before the Court in the instant motions is whether the Policy provides coverage for Plaintiffs' extended general conditions claims. As is relevant to this question, the Policy provides:

**SECTION II – COVERAGE**

**1. INSURING AGREEMENT:**

This Policy, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to property insured while at the location of the **INSURED PROJECT\***, while in offsite temporary storage or while in transit, all within this Policy's territory and occurring during the Period of Insurance of this Policy.

R. Doc. 823-3 at 22.

\*\*\*

**SECTION IV – GENERAL CONDITIONS**

\*\*\*

**27. VALUATION**

Subject to the applicable Limit, Sublimit or Aggregate Limit of liability as the case may be, the basis of adjustment of a claim at the time of loss, unless otherwise endorsed herein, shall be as follows:

**A. Property Under Construction** - The cost to repair or replace the lost or damaged property, valued as of the time and place of loss, with material of like kind and quality, less betterment, including contractor's reasonable profit and overhead in the same proportion as that included in the original contract documents. If not so replaced, loss shall be settled on an actual cash value . . ..

*Id.* at 39 (the "Valuation Provision").

Defendants assert the above language unambiguously does not provide coverage for Plaintiffs' extended general conditions claims. They argue "the Valuation [P]rovision only provides payment for the *actual cost to repair or replace the lost or damaged property*, including Plaintiffs' reasonable profit and overhead *on those repair costs*." R. Doc. 823-1 at 10 (emphasis original). That is, Defendants agree that, under the terms of the Policy, Plaintiffs are entitled to recover general conditions costs actually incurred while completing repairs on the Project necessitated by any covered loss events. *See id.* at 11-13. However, Defendants argue, that is not what Plaintiffs seek: instead, Plaintiffs claim entitlement to a "daily rate of extended general conditions . . . for each day" that Plaintiffs assert final completion of the Project was delayed as a result of the loss events. *Id.* at 10. Thus, Defendants argue that Plaintiffs' extended general conditions claims are "delay-based" and therefore specifically excluded from coverage under the Policy, which provides:

### SECTION III – EXCLUSIONS

\*\*\*

**2. PERILS EXCLUDED**:

This Policy shall not pay for loss, damage or expense caused by, resulting from, contributed to or made worse by any of the following excluded perils, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage insured by this Policy, except as specifically allowed below:

**A.** Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, **delay in completion,** or noncompliance with contract conditions, **whether caused by a peril insured or otherwise**; however the foregoing shall not exclude Delay in Completion Coverage[4] when it is specifically made a part of this Policy by endorsement to this Policy and as limited by that endorsement.

---

[4] The parties agree McDonnel did not purchase Delay in Completion Coverage.

R. Doc. 823-3 at 29 (emphasis added) (the "Exclusionary Provision").

On the other hand, Plaintiffs argue the Valuation Provision unambiguously *does* provide coverage for their extended general conditions claims. R. Doc. 842. In support of this argument, Plaintiffs point primarily to one case out of the United States District Court for the District of New Jersey, *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F.Supp.2d 55 (D.N.J. 2007). In *Zurich*, the court considered a similar valuation provision and held that similar policy language provided coverage for extended general conditions costs, reasoning that "from the perspective of an ordinary insured . . . the term 'property lost or damaged' . . . refers to the entire structure," not just the portion damaged by a loss event, and thus that the valuation provision provided coverage for "increased costs to complete construction of undamaged property[.]" 513 F.Supp.2d at 70. Additionally, the *Zurich* court considered whether a similar exclusionary provision excluded coverage for such costs. That court explained that "in New Jersey, when an insurance policy uses an exclusion which bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss." *Id.* That is, "coverage is available if the covered peril was the efficient proximate cause of a loss and an excluded peril merely occurred in the chain of events that followed." *Id.* Plaintiffs assert that this "Efficient Proximate Cause Theory" also applies in Louisiana, and thus argue that the Court should follow *Zurich*. R. Doc. 842 at 8.

Having scrutinized the relevant language of the Policy, this Court concludes Defendants have shown that there is no genuine dispute of material fact as to whether the extended general conditions costs Plaintiffs claim are covered under the Policy: They are not. McDonnel does not seek "reasonable . . . overhead" that it incurred in the process of "repairing or replacing the lost or damaged property[.]" R. Doc. 823-3 at 39. Instead, McDonnel asks this Court to award it a set

6

daily rate of $14,114.82 for each day it claims completion of the Project was delayed as a result of the loss events. *See* R. Doc. 823-8 at 3. This daily rate does not represent actual overhead costs McDonnel incurred while repairing the Hotel from damage caused by the loss events; rather, it was calculated based on an average of McDonnel's overhead costs during the original contract term. *Id.*; *see also* R. Doc. 904-5. Under the terms of the Policy, McDonnel is entitled to recover any reasonable overhead costs it incurred while repairing damage caused to the Hotel by the loss events. For example, if, after a loss event, McDonnel spent fifteen days repairing damage caused by that loss event, work that it would not have had to complete in the absence of the loss event, McDonnel would be entitled under the Policy to recover any reasonable overhead costs incurred during those fifteen days. But McDonnel is not entitled to recover a theoretical daily rate for every day it claims completion of the Project was delayed because of the loss events.

This conclusion is further enforced by the Exclusionary Provision, which explicitly excludes damages caused by a delay in completion **"**whether caused by a peril insured or otherwise[.]**"** R. Doc. R. Doc. 823-3 at 29. McDonnel does not contest that the asserted damages in its extended general conditions claim are based on a daily rate multiplied by the number of days McDonnel claims that final completion of the Project was *delayed*—not on actual overhead costs McDonnel incurred while repairing damage caused by the loss events. The Court cannot construe this as anything other than a claim for damages caused by a delay in completion of the Project, which the Policy explicitly excludes.

*Zurich* does not change this result. *See* 513 F.Supp.2d at 70. Apart from being unbinding on this Court, as noted by other courts, the decision in *Zurich* is "unpersuasive[.]" *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 2226202, at *11 (N.D. Ill. Apr. 22, 2015). As explained in *One Place*, the court in *Zurich* "did not explain why having a policy that

covers loss occurring anywhere at the job site translates into an insurer being responsible for paying the increased costs to complete construction of *undamaged* property following a loss." *Id.* at 12. Additionally, *Zurich*'s holding that "from the perspective of an ordinary insured . . . the term 'property lost or damaged' . . . refers to the entire structure," not just the portion damaged by a loss event, 513 F.Supp.2d at 70, is not supported by any relevant case law and seems contrary to even the cited New Jersey case law. The case cited in *Zurich* for this proposition, *Daus v. Marble,* recognizes that "[i]nsurance contracts are to be construed in accordance with the reasonable expectations of the average policy holder[,]" 270 N.J. Super. 241, 250 (App. Div. 1994) (citing *Killeen Trucking, Inc. v. Great American Surplus Lines Ins. Co.*, 211 N.J. Super. 712, 716 (App. Div. 1986)), but also that this "rule of liberal construction cannot operate to authorize a perversion of the language" of the policy. *Id.* at 250–51 (citing *Salem Group v. Oliver*, 248 N.J. Super. 265, 271 (App. Div. 1991), *aff'd*, 128 N.J. 1 (1992)) (internal quotation removed). *Zurich*'s interpretation of the term "property lost or damaged" to include all portions of an insured project, whether damaged or undamaged by a covered loss event, does just that.

*Zurich*'s discussion of "Efficient Proximate Cause Theory" is similarly unhelpful. *See* 513 F.Supp.2d at 70–71. Louisiana courts recognize that the Efficient Proximate Cause doctrine only applies to a "policy not otherwise limited or defined." *Cameron Par. Sch. Bd. v. RSUI Indem. Co.*, 620 F. Supp. 2d 772, 780–81 (W.D. La. 2008) (citing *Roach–Strayhan–Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co. of N.Y.*, 112 So.2d 680, 683 (La. 1959)). In *Cameron*, the court held based on the quoted language in *Roach* and its progeny that in Louisiana "insurance companies and their insured may opt-out of the efficient proximate cause doctrine by contract." 620 F. Supp. 2d at 781. The *Cameron* court reasoned that "nothing in Louisiana case law, statute, or public policy precludes insurance companies and their insured from opting-out of the efficient

8

proximate cause doctrine[,]" *id.*, and that "no Louisiana statute mandates that insurance policies reflect the efficient proximate causation doctrine" *Id.* (citing *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 435 (5th Cir. 2007) (holding under Mississippi law that insurance policies may contain provisions opting out of the doctrine of efficient proximate cause, even though that doctrine is the default rule in Mississippi)). Here, the Policy explicitly states it "shall not pay for loss, damage or expense caused by, resulting from, contributed to or made worse by [delay in completion], all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage insured by this Policy . . . whether caused by a peril insured or otherwise." R. Doc. 823-3 at 29. Accordingly, by its clear and unambiguous terms, the Policy is "otherwise limited or defined[,]" *see Roach*, 112 So.2d at 683, and the effective proximate cause theory does not apply.

ASE's extended general conditions claim is also based on a theoretical daily rate multiplied by the number of days it claims the Project was delayed as a result of the loss events and therefore suffers from these same deficiencies. *See* R. Doc. 837-7 at 4. Thus, the Court holds that there is no genuine issue of material fact as to whether McDonnel and ASE's extended general conditions claims are covered under the Policy, and Defendants are entitled to judgment on that issue in their favor.

Having so concluded, the Court need not address the remainder of Defendants' arguments in their motion for summary judgment on ASE's claims. R. Doc. 837. ASE's only remaining claim is for bad faith penalties under La. R.S. §§ 22:1973 and 22:1892, but relief under these statutes would require a finding that Defendants failed in bad faith to adjust or pay out properly at least one of ASE's substantive loss claims. All of ASE's substantive loss claims have been settled or dismissed. Therefore, ASE cannot prevail on its bad faith claim, and it must be dismissed as well.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment, R. Doc. 823, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment as to all of ASE's claims, R. Doc. 837, is **GRANTED**. Accordingly, judgment is entered on those claims in favor of Defendants.

New Orleans, Louisiana, this 22nd day of September, 2023.

**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**