**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THE MCDONNEL GROUP, LLC** | **CIVIL ACTION NO: 18-1380 c/w 19-2230; 19-10462** |
| **VERSUS** | **(Applies to All Cases)** |
| **STARR SURPLUS LINES INSURANCE COMPANY AND LEXINGTON INSURANCE COMPANY** | **SECTION: T (1)** |

## ORDER AND REASONS

The Court has before it Defendants Starr Surplus Line Insurance Company and Lexington Insurance Company's (collectively "Defendants) Motion in Limine to exclude the testimony of Plaintiff The McDonnel Group, LLC's ("McDonnel") expert witness Joe Caldarera. R. Doc. 913. Defendants assert that Caldarera's expert report and the testimony he is expected to give at trial are "replete with impermissible legal assertions and conclusions[,]" that Calderara is "not qualified" to give many of the opinions he offers, and that Caldarera's methodology is "flawed and unreliable." R. Doc. 913-1 at 2. McDonnel has responded in opposition, R. Doc. 938, and Defendants have filed a reply memorandum, R. Doc. 965. Having considered the parties' briefing, the record, and the applicable law, the Court will DENY IN PART and GRANT IN PART Defendants' Motion.

### I.      BACKGROUND

This litigation arises out of six loss events at the Jung Hotel (the "Hotel") that occurred during 2017 while the Hotel was undergoing renovations. Intervenor Plaintiff The Jung, LLC ("Jung")[1], the owner of the Hotel, hired McDonnel in 2014 as its general contractor for the Hotel's redevelopment and renovation (the "Project"). McDonnel purchased Completed Value

---

[1] Jung's claims have been previously dismissed. *See* R. Doc. 990.

1

Construction All Risks Policies from Defendants, which provided property damage coverage for the Project. Each Defendant insured 50% of the risks under the Policy. The Policy's effective period ran from February 23, 2015, through February 23, 2017, but was extended by multiple endorsements to August 22, 2017.

McDonnel filed the instant suit against Defendants on February 9, 2018, claiming property remediation and repair costs related to the six loss events, as well as additional costs allegedly incurred because of delays to the Project caused by the loss events, and bad faith penalties under La. R.S. §§ 22:1973 and 22:1892. In support of its claims, McDonnel proffered the report of Joe Caldarera, who McDonnel asserts is an expert in construction, claims adjusting, and project scheduling, with over four decades of experience. *See* R. Doc. 913-4 at 3–14. McDonnel seeks to have Caldarera testify as an expert at trial in support of its claims that (1) Defendants acted in bad faith in failing to adjust and pay out properly McDonnel's covered claims; (2) the Project was delayed as a result of the loss events, causing McDonnel to incur costs, and; (3) McDonnel is entitled to $2,921,768.62 from Defendants to cover those costs, a figure calculated using the "Caldarera Formula[.]" *See* R. Doc. 938; *see also* R. Doc. 913-5. Defendants now move this Court to exclude Caldarera's expert testimony as unreliable and unfounded on his actual qualifications. R. Doc. 913.

## II.    APPLICABLE LAW

Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case." *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).

In *Daubert*, the Supreme Court established a two-part test for judges to perform in determining the admissibility of expert testimony. *Daubert*, 509 U.S. at 588. First, the court must determine whether the expert's testimony reflects scientific knowledge, is derived by the scientific method, and is supported by appropriate validation. *Id.* at 590. Therefore, the court must examine the expert's methodology. Second, the court must determine whether the testimony will assist the trier of fact in understanding the evidence. *Id.* at 591. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, courts should use caution, because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of challenging an expert's testimony. *Daubert,* 509 U.S. at 596. "These conventional devices, rather than wholesale exclusion . . . are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Id.* When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

## III. DISCUSSION AND ANALYSIS

Defendants assert this Court should exclude Caldarera's expert testimony in whole or in part on several grounds. The Court will examine each argument in turn.

### A. Impermissible Legal Conclusions

Defendants assert that Caldarera's expert report "include[s] a litany of impermissible legal conclusions[.]" R. Doc. 913-1 at 7. The United States Court of Appeals for the Fifth Circuit has explained that "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977). McDonnel does not dispute that experts may not offer legal conclusions; however, it argues that the specific phrases in Caldarera's report to which Defendants object are not legal conclusions, but "clearly simply factual statements."[2] R. Doc. 938 at 6.

As another section of this Court has explained, "distinguishing between admissible testimony regarding the inferences that can be drawn from facts of a certain case and an inadmissible ultimate legal conclusion . . . is often a fine line." *Cordes v. OSG Ship Management, Ltd.*, 2013 WL 1992178, at \*4 (E.D. La. May 10, 2013). Accordingly, while the Court agrees that Caldarera will not be permitted to offer legal conclusions in his testimony, the Court will defer ruling on what precise testimony constitutes impermissible legal conclusions until it can hear the parties' arguments *in situ* at trial. Thus, Defendants' Motion is DENIED as to this issue, without prejudice to any parties' right to reraise the issue at trial should it be necessary.

---

[2] For example, Defendants object to Caldarera's statement that Defendants "ignored the [Flood Policy] Sublimit when applying the Deductible . . ." R. Doc. 913-5 at 4, as an impermissible legal conclusion because it "opine[s] on the meaning or interpretation of insurance policy terms." R. Doc. 965 at 1–2; *see also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (expert testimony "cannot be used to provide legal meaning or interpret [insurance] policies . . ..");  *Dabbs v. Shelter Mut. Ins. Co.*, 2019 WL 4747711, at \*3 (W.D. Okla. Sept. 27, 2019) ("statements regarding the meaning of Plaintiff's insurance policy" are impermissible legal conclusions). On the other hand, McDonnel asserts that this is simply a statement of fact and not an interpretation of the requirements of the Policy.

## B. Qualifications as Expert on Claims Handling/Adjustment

Defendants assert that Caldarera is not qualified to offer expert opinion evidence on insurance claims handling and adjustment. R. Doc. 913-1 at 10–13. They argue that while "Caldarera holds an adjuster's license in Louisiana, there is no indication that he has any real experience adjusting claims *in the role of an adjuster*." *Id.* at 11 (emphasis original).

It is true that Caldarera's curriculum vitae indicates that he has never worked as an independent adjuster or for an adjusting company. *See* R. Doc. 913-4. But "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility[.]" *Huss*, 571 F.3d at 452. As McDonnel points out, Caldarera is in fact an adjuster licensed by the state of Louisiana, and Caldarea testified in his deposition that in his role as an "independent building consultant" he frequently evaluates and adjusts claims for large insurers and in fact "supervise[s] adjusters." *See* R. Doc. 938-1 at 6–8. Additionally, McDonnel has presented evidence that Caldarera has been performing insurance claim adjustment work since as early as 1982. *See* R. Doc. 938 at 8–9. Accordingly, the Court holds that Caldarera is at least "minimally qualified" to offer expert testimony on claims handling and adjustment.[3] *See Nasset v. United States*, 2020 WL 3001312, at *2 (E.D. La. June 4, 2020) (quoting *Mounce v. Doe*, 2014 WL 2587698, at *4 (E.D. La. June 10, 2014) (explaining "[t]he qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level

---

[3] This holding should not be read as an endorsement of McDonnel's argument that Caldarera's "vast experience as a construction professional and contractor" in itself "qualif[ies Caldarera] as an adjuster." R. Doc. 938 at 9. It is primarily Caldarera's experience adjusting insurance claims as an independent building consultant, not his experience as a contractor, that minimally qualifies Caldarera as an expert in claims adjustment. *But see also United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013), *cert. denied*, 124 S. Ct. 1011 (2014) (holding that "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications").

of the expert's expertise [go] to credibility and weight, not admissibility"). Therefore, Defendants'
Motion is DENIED as to this issue.

### C.  Methodology and the "Caldarera Formula"

Defendants concede that Caldarera "may be minimally qualified to give scheduling
opinions[,]" but argue that the scheduling opinions Caldarera seeks to offer are "not the product of
accepted scheduling analyses[,]" but rather "are the product of client advocacy." R. Doc. 913-1 at
13–14. They complain that Caldarera makes "use of a formula of his own creation called the
'Caldarera Formula'" to support his expert opinion as to the costs McDonnel incurred due to the
delay in completion of the Project caused by the loss events. *Id.* at 17.

As to Defendants' argument that Caldarera's opinions are biased because he is McDonnel's
"advocate" rather than a true expert, the Court notes that "[o]rdinarily, an expert's alleged bias is
an issue of credibility and not admissibility." *Conerly Corp. v. Regions Bank*, 2010 WL 11538005,
at *3 (E.D. La. Jan. 20, 2010). If Defendants believe that Caldarera's expert opinions are tainted
by bias in McDonnel's favor, the "appropriate means" of challenging his testimony is via
"[v]igorous cross-examination" at trial. *Daubert,* 509 U.S. at 596.

However, this Court has already rejected Caldarera's theory, based on the "Caldarera
Formula," that McDonnel is entitled to a set daily rate of $14,114.82 for each day McDonnel
asserts completion of the Project was delayed as a result of the loss events, or a total of
$2,921,768.62. *See* R. Doc. 995 at 6–7. The Court has entered summary judgment on that claim in
favor of Defendants. *See id.* at 10.  Accordingly, Caldarera's opinions based on the "Caldarera
Formula" are not relevant to any remaining claim that will be presented at trial, and would thus be
of no help to the jury in its role as factfinder. Therefore, Defendants' motion is GRANTED to the

extent that Defendants ask this Court to exclude expert testimony from Caldarera based on the "Caldarera Formula."

### D. Opinions Based on Unproduced Documents

Defendants assert that some or all of Caldarera's expert opinions are based on documents which have never been produced to Defendants, and that those opinions are therefore inadmissible. R. Doc. 913-1 at 20. However, on review of the record the Court is satisfied that the relevant documents on which Caldarera relied in forming his expert opinions in this matter have in fact been properly disclosed to Defendants. *See* R. Doc. 938 at 23–25. Thus, Defendants' Motion is DENIED as to this issue.

### E. Testimony on Behalf of Other Plaintiffs

Finally, Defendants argue that even if this Court denies their motion to exclude Caldarera from testifying on McDonnel's behalf, Caldarera should be excluded from testifying on behalf of or in support of the claims of other plaintiffs who have not designated Caldarera as one of their expert witnesses. However, all other plaintiffs have already been dismissed from this action. *See* R. Docs. 730; 990; 995. Accordingly, Defendants' motion is DENIED AS MOOT as to this issue.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion in Limine, R. Doc. 913, is **DENIED IN PART** and **GRANTED IN PART** as explained herein.


New Orleans, Louisiana, this 25th day of September, 2023.


**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**